Laurin Stuart LANEY, Appellant,

v.

The STATE of Texas.

No. 1196–02.

Court of Criminal Appeals of Texas,
En Banc.

Oct. 8, 2003.

Douglas M. Durham, Houston, for Appellant.

Donald W. Rogers, Jr., Asst. DA, Houston, Matthew Paul, State's Attorney, Austin, for State.

## OPINION

HERVEY, J., delivered the opinion of the Court in which KELLER, PJ., WOMACK, KEASLER, HOLCOMB, and COCHRAN, JJ., joined.

We granted discretionary review to determine whether the "community caretaking function" exception to the warrant requirement applies to the warrantless entry and search of a private residence. While this term has been used in various contexts, we take this opportunity to clarify its use and hold that, as part of the police officer's community caretaking functions to protect and preserve life and prevent substantial injury, an officer may enter and search a private residence without a warrant for the limited purpose of serving those functions when it is objectively reasonable.

Shortly after midnight, on May 25, 1999, Harris County Sheriff's deputies responded to a call involving a disturbance between neighbors in appellant's mobile home park. As the deputies were speaking with some of the neighbors about the incident, appellant came out of his trailer, approached the officers, and explained that he had turned off the electricity to a neighbor's trailer in retaliation for the neighbor's turning off of his electricity. The deputies placed appellant in the back of their patrol car for their safety pending possible charges for criminal mischief. While the deputies continued their investigation, one of the deputies, Brian Quiser, noticed two young boys come out of appellant's darkened trailer onto the front porch. Deputy Quiser asked appellant if the children were his; he replied they were not. When Quiser made eye contact with the children, both walked back into the trailer. Quiser then asked appellant if he had ever been arrested, and appellant informed him he had been arrested for indecency with a child.

Quiser walked over to the trailer to speak with the boys. At the suppression hearing, Quiser testified that since appellant was detained and possibly going to jail, it was his responsibility to get the children out of the trailer and find out who their parents were. As Quiser approached the trailer, one of the boys came out and stood there with the door open. When asked where the other child was, the boy told Quiser the other child was his brother, Joey, and that he was in the back bedroom. Quiser told the boy to stay on the porch and proceeded to enter the trailer. He called Joey's name, but there was no response. With his flashlight on, Quiser moved toward one of the back bedrooms

where he found Joey sitting on the bed. While scanning the room with his flashlight, he noticed a piece of paper lying on a shelf by itself. The paper had photographic reproductions of what appeared to be eleven- to twelve-year-old boys engaging in deviant sexual contact. Quiser did not touch the paper, but instead led Joey out of the trailer. Quiser immediately informed his supervisor, Deputy Garrett DeMilia, that he had found something in the trailer. DeMilia testified that they both then proceeded back into the trailer and went directly to the bedroom where the paper with the photographs was located.[1] As with Quiser, DeMilia testified that he did not touch the paper. DeMilia then called his supervisors and detectives to come to the scene. Upon arrival, the deputies obtained appellant's consent to search the trailer. During the subsequent search, the deputies seized the paper along with a floppy disk that turned out to contain similar images.

At the hearing on appellant's motion to suppress, the State argued that the community caretaking function exception to the warrant requirement applied to Quiser's warrantless entry and search of appellant's trailer. Following a hearing on the motion, the trial court made the following oral findings:

That the police went out there to investigate the incident involving turning off the electricity. The defendant was lawfully detained for the purposes of investigating this situation between the defendant and the neighbor regarding the disconnecting of the electricity. That the police officers—was approximately midnight and the police officers observed two young boys come out of defendant's trailer, who appeared to be

---

1. Appellant does not challenge this subsequent entry made by both Quiser and DeMilia.

between the ages of ten and twelve. And that upon seeing the officers, they ran back into the apartment. The defendant told the officers that they were not his sons, told the officers he had been twice previously convicted of the offense of indecency with a child, and it is the court's opinion that the police officers were absolutely unequivocally, without question, entitled to enter the defendant's trailer in order to conduct a search for the remaining child who they did not have possession of. One of the boys was outside the trailer told the officers, my brother is inside. I think it would be absolutely incredible, totally outrageous to have required police officers to have obtained a search warrant under those circumstances to secure the possession of a child between the ages of ten and twelve who was inside the trailer of a person who had admitted to the police of having been twice previously convicted of indecency with a child. There's no doubt, no question exigent circumstances existed, allowing the officers to enter the trailer to secure the person, the child between the ages of ten and twelve, while there, the court is of the opinion they did in fact tell you what they determined to have seen, the pornographic material is in plain view.

■■■■ We first note that when reviewing this motion to suppress, we will give great deference to the trial court's findings of historical facts. *Guzman v. State,* 955 S.W.2d 85, 89 (Tex.Crim.App.1997). We review *de novo* mixed questions of law and fact that do not turn on an evaluation of credibility and demeanor. *Id.* Furthermore, we will sustain the trial court's ruling admitting the evidence if the ruling is reasonably supported by the record and correct on any theory of law applicable to the case. *Willover v. State,* 70 S.W.3d 841, 845 (Tex.Crim.App.2002). This is so even if the trial judge gives the wrong reason for the decision. *State v. Ross,* 32 S.W.3d 853, 855–56 (Tex.Crim.App.2000) (citing *Romero v. State,* 800 S.W.2d 539, 543 (Tex. Crim.App.1990)).

On appeal, the court recognized that this Court identified the community caretaking function exception in *Wright v. State,* 7 S.W.3d 148, 153 (Tex.Crim.App.1999), but noted that this Court had yet to address its application to a warrantless entry and search of a private residence. *Laney v. State,* 76 S.W.3d 524, 528–29 (Tex.App.-Houston [14th Dist.] 2003). The court explained that because *Wright* involved a vehicle search, and because this case involved the deputy's concern and responsibility for the welfare of the children (as opposed to concern for the appellant), the factors set forth in *Wright* used to determine the reasonableness of a stop to check on the welfare of a passenger were not helpful. *Id.* at 529. The court, therefore, relied on two federal cases, *United States v. Rohrig,* 98 F.3d 1506, 1523 (6th Cir. 1996) and *United States v. Meixner,* 128 F.Supp.2d 1070, 1074–75 (E.D.Mich.2001),[2] and the factors set forth therein for determining when a warrantless entry of a home is justified as a community caretaking function. *Id.* After going through each factor, the court concluded that the deputy's actions were reasonable and, therefore, justified under the community caretaking function exception. *Id.* at 530. We will focus on cases from this Court and the Supreme Court to determine the application of this doctrine to searches of private

---

**2.** The court also relied upon two Fifth Circuit cases, *United States v. York,* 895 F.2d 1026, 1028–30 (5th Cir.1990) and *United States v. Prescott,* 599 F.2d 103, 106 (5th Cir.1979) that applied a more general test of reasonableness in light of objective facts known to the officer at the time. *Laney,* 76 S.W.3d at 529.

residences. *See Mosley v. State,* 983 S.W.2d 249, 256 n. 13 (Tex.Crim.App.1999) ("Federal circuit cases may be persuasive, but are not binding authority.").

The term "community caretaking function" was first used by the Supreme Court in *Cady v. Dombrowski,* 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973). There the defendant had been in an accident, and his vehicle was subsequently towed to a private storage lot. *Id.* at 436, 93 S.Ct. 2523. Upon taking him to the hospital, the officers, who had identified the defendant as a Chicago police officer, noticed he did not have his service revolver on him. *Id.* at 437, 93 S.Ct. 2523. One of the officers, therefore, went to search the vehicle for the missing revolver. *Id.* In the course of the warrantless search, the officer discovered evidence connected to a murder the defendant committed shortly before the accident. *Id.* The Court noted that "searches of cars that are constantly movable may make the search of a car without a warrant a reasonable one although the result might be the opposite in a search of a home, a store, or other fixed piece of property." *Id.* at 440, 93 S.Ct. 2523 (quoting *Cooper v. California,* 386 U.S. 58, 59, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967)). The Court also recognized that

> Local police officers, unlike federal officers, frequently investigate vehicle accidents in which there is no claim of criminal liability and engage in what, for want of a better term, may be described as *community caretaking functions,* totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute.

*Id.* at 441, 93 S.Ct. 2523 (emphasis added). With these two principles in mind, the Court held the justification for the search—"concern for the safety of the general public who might be endangered if an intruder removed the revolver from the trunk of the [unattended] vehicle"—was constitutionally reasonable and, therefore, no warrant was required. *Id.* at 447, 93 S.Ct. 2523.

This "concern for public safety" rationale was used by the Supreme Court thereafter to create additional exceptions to the warrant requirement. *See South Dakota v. Opperman,* 428 U.S. 364, 366, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976) (automobile inventory doctrine); *Mincey v. Arizona,* 437 U.S. 385, 392, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978) (emergency doctrine). In *Mincey,* the Court addressed the constitutionality of a warrantless search of an apartment after a shoot-out between officers and the occupants of the apartment. *Id.* at 390–95, 98 S.Ct. 2408. The Court held, "[T]he Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid." *Id.* at 392, 98 S.Ct. 2408; *see Michigan v. Tyler,* 436 U.S. 499, 509–510, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978). According to the Court, "The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency." *Mincey,* 437 U.S. at 392–93, 98 S.Ct. 2408(quoting *Wayne v. United States,* 318 F.2d 205, 212 (D.C.Cir.1963) (opinion of Burger, J.)). But the Court was careful to limit this exception, noting that "a warrantless search must be 'strictly circumscribed by the exigencies which justify its initiation.' " *Id.* at 393, 98 S.Ct. 2408 (quoting *Terry v. Ohio,* 392 U.S. 1, 25–26, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). The officers in *Mincey* conducted a four-day warrantless search that included opening dresser drawers and ripping up carpets; such a search, according to the Court, could "hardly be rationalized in terms of the legitimate concerns that justify an emergency search." *Id.* Therefore, despite the

"constitutional difference between houses and cars" for purposes of the Fourth Amendment recognized by the Court in *Cady*, the Court, in *Mincey*, nonetheless recognized that "[t]he need to protect or preserve life or avoid serious injury" justified a warrantless intrusion and limited search of a private residence. *Id.* at 392, 98 S.Ct. 2408; *Cady*, 413 U.S. at 439–40, 93 S.Ct. 2523 (quoting *Chambers v. Maroney*, 399 U.S. 42, 52, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970)).

While the term "community caretaking function" was first referenced by this Court over twenty-five years ago, *see Robertson v. State*, 541 S.W.2d 608, 611 (Tex. Crim.App.1976) (regarding automobile inventory searches), it was not until four years ago, in *Wright v. State*, that this Court first discussed the community caretaking function as an exception to the Fourth Amendment's warrant requirement. *Wright*, 7 S.W.3d at 151. Relying on *Cady*, this Court remanded the case to determine whether a deputy acted reasonably in stopping the vehicle in which appellant rode, out of concern for the appellant's welfare; the deputy had observed him leaning out of an open rear window at 4:00 a.m. *Id.* This Court held, "As part of his duty to 'serve and protect,' a police officer may stop and assist an individual whom a reasonable person—given the totality of the circumstances—would believe is in need of help," and then set forth the list of factors mentioned, but not applied, by the court of appeals below. *Id.* at 151–52.[3] This Court concluded

> While we today recognize the existence of the community caretaking function in Texas, we emphasize its narrow applicability. Only in the most unusual circumstances will warrantless searches of private, fixed property, or stops of persons located thereon, be justified under the community caretaking function, given the greater expectation of privacy inherent with respect to residences and other private real property.

*Id.* at 152. The footnote to this conclusion explained further, "We have already recognized a doctrine similar to the community caretaking function applicable to warrantless searches of private residences: the emergency doctrine." *Id.* at 152 n. 7 (citing *Brimage v. State*, 918 S.W.2d 466, 500–02 (Tex.Crim.App.1996) (plurality op. on reh'g)).

We again had the opportunity to address the community caretaking function in *Corbin v. State*, 85 S.W.3d 272 (Tex.Crim.App. 2002). In that case, the officer observed the appellant cross onto the shoulder of the road for approximately twenty feet while traveling at fifty-two miles an hour, thirteen miles an hour under the speed limit. *Id.* at 274. Concerned that the appellant was drunk or sleepy, and thus in need of assistance, the officer turned on his overhead lights, and the appellant pulled over without difficulty. *Id.* After asking the appellant to step out of his vehicle, the officer patted the appellant down and eventually discovered a package of cocaine taped to appellant's back. *Id.* This Court applied the factors set forth in *Wright* and concluded that the officer's exercise of his community caretaking function was not reasonable. *Id.* at 277–78.

The court of appeals here correctly decided not to apply the factors this Court set forth in *Wright* and used in *Corbin* as

---

**3.** The factors set forth in *Wright* are as follows: (1) the nature and level of the distress exhibited by the individual; (2) the location of the individual; (3) whether or not the individual was alone and/or had access to assistance independent of that offered by the officer; and (4) to what extent the individual—if not assisted—presented a danger to himself or others. *Id.* at 152.

neither of these cases apply to this case. Not only did both cases involve vehicle stops and searches, but also, as referred to earlier, "Only in the most unusual circumstances will warrantless searches of private, fixed property ... be justified under the community caretaking function, given the greater expectation of privacy inherent with respect to residences...." *Wright*, 7 S.W.3d at 152. This rule is consistent with the Supreme Court's holding in *Cady* and the exception to the Fourth Amendment's warrant requirement created by it. *See Cady*, 413 U.S. at 439–42, 93 S.Ct. 2523.

But this does not mean that the reasoning behind the holding in *Cady* does not apply here. The Court in *Cady* recognized that officers "engage in what, for want of a better term, may be described as community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *Id.* at 441, 93 S.Ct. 2523; *see also* Wayne R. LaFave, 3 SEARCH AND SEIZURE § 6.6 (1996) (quoting ABA Standards for Criminal Justice § 1–1.1 (2d ed. 1980)) ("A police officer has 'complex and multiple tasks to perform in addition to identifying and apprehending persons committing serious criminal offenses.' "). They do so acting out of "concern for the safety of the general public...." *Cady*, 413 U.S. at 447, 93 S.Ct. 2523. These "community caretaking functions" include, among others, the duty to "reduce the opportunities for the commission of some crimes through preventive patrol and other measures," "aid individuals who are in danger of physical harm," "assist those who cannot care for themselves," and "resolve conflict." LaFave, *supra*, § 6.6. And while not all of these community caretaking functions will justify a warrantless entry and search of a private residence, the Supreme Court has recognized that, "[t]he need to protect or preserve life or avoid serious injury is justifi-

cation for what would be otherwise illegal absent an exigency or emergency." *Mincey*, 437 U.S. at 392, 98 S.Ct. 2408. Therefore, the Court has held, "[T]he Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid"—the emergency doctrine. *Id.*

This case presents two distinct problems—one dealing with terminology and the other dealing with application—both requiring considerable discussion. The problem with the terminology is that various titles describe the different doctrines setting forth exceptions to the warrant requirements of the Fourth Amendment, resulting in confusion over the proper application of the correct doctrine. This problem is clearly reflected in this case, and more generally in this entire area of the law dealing with the "community caretaking function."

The notion that officers act pursuant to their "community caretaker functions" serves as a basis for three separate doctrines created by the Supreme Court:

1) the emergency aid doctrine, established in *Mincey*;

2) the automobile impoundment and inventory doctrine, first conceived in *Cady*, and later expanded upon in *Opperman*; and,

3) the community caretaking doctrine, or public servant doctrine, established in *Cady*, and followed by this Court in *Wright* and *Corbin*.

*See Corbin* 85 S.W.3d at 279 (Cochran, J., concurring); Mary E. Naumann, Note, *The Community Caretaker Doctrine: Yet Another Fourth Amendment Exception*, 26 AM. J.CRIM. L. 325, 329 (1999). The common thread in each of these three exceptions to the warrant and probable cause requirements is the officer's purpose.

*Corbin,* 85 S.W.3d at 280 (Cochran, J., concurring).

The emergency doctrine is not the same as the community caretaking doctrine established in *Cady.* The distinction between the emergency doctrine and the community caretaking doctrine, hereinafter referred to as the *Cady* doctrine, is a narrow, but critical one. Under the emergency doctrine, the officer has an immediate, reasonable belief that he or she must act to "protect or preserve life or avoid serious injury." *Mincey,* 437 U.S. at 392, 98 S.Ct. 2408. On the other hand, under the *Cady* doctrine, the officer "might or might not believe there is a difficulty requiring his general assistance." Naumann, *supra,* at 333; *see Cady,* 413 U.S. at 437, 93 S.Ct. 2523 (stating officers were under the impression that appellant, as a Chicago police officer, was required to carry a service revolver at all times, therefore, acting pursuant to department procedure, they sought to find the revolver in appellant's vehicle). Therefore, while both doctrines are based on an officer's reasonable belief in the need to act pursuant to his or her "community caretaking functions," the emergency doctrine is limited to the functions of protecting or preserving life or avoiding serious injury. Additionally, the *Cady* doctrine deals primarily with warrantless searches and seizures of automobiles (and will be limited to those circumstances except in unusual circumstances), while the emergency doctrine deals with warrantless entries of, but is not limited to, private residences. *See Wright,* 7 S.W.3d at 152 n. 7.

Having clarified the distinction between the *Cady* doctrine and the emergency doctrine, we now turn to clarifying the use of the term "exigency" as it relates to the emergency doctrine. The emergency doctrine is considered synonymous with the exigent circumstances doctrine. *See*

*Brimage,* 918 S.W.2d at 500; *Colburn v. State,* 966 S.W.2d 511, 519 (Tex.Crim.App. 1998); 40 Dix & Dawson, TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 12.11 (2d ed. 2001 & Supp.2003). But like the emergency doctrine and the *Cady* doctrine, there is also a narrow, but critical, distinction between the two. "The exigent circumstances doctrine applies when the police are acting in their 'crime-fighting' role." Naumann, *supra,* at 331; *see Welsh v. Wisconsin,* 466 U.S. 740, 748–50, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984). For instance, in *Welsh,* where officers entered the appellant's residence and arrested him after receiving information that he was driving under the influence, the Supreme Court held that no exigent circumstances existed allowing for such an intrusion into the appellant's home. *Welsh,* 466 U.S. at 750, 104 S.Ct. 2091. On the contrary, the emergency doctrine applies when the police are acting, not in their "crime-fighting" role, but in their limited community caretaking role to "protect or preserve life or avoid serious injury." *Mincey,* 437 U.S. at 392, 98 S.Ct. 2408.

To sum up, the Supreme Court has established three doctrines as exceptions to the warrant requirement when a police officer acts pursuant to his or her community caretaking functions—the *Cady* doctrine, the emergency doctrine (not to be confused with the exigent circumstances doctrine), and the automobile impoundment/inventory doctrine.

We now turn to the problem of applying the proper doctrine. In this case, the State argued in the trial court that the *community caretaking* exception applied. The trial court found, "There's no doubt, no question *exigent circumstances* existed, allowing the officers to enter the trailer to secure the person." The court of appeals analyzed the case under what it labeled a *community caretaking doctrine* using the

factors set forth in *Rohrig*.[4] This being an *emergency doctrine* case, however, the proper standards are those set forth by this Court regarding the *emergency doctrine*, and not those set forth by the United States Court of Appeals for the Sixth Circuit in *Rohrig*.[5]

 "We have used an objective standard of reasonableness in determining whether a warrantless search is justified under the Emergency Doctrine." *Brimage*, 918 S.W.2d at 501; *Colburn*, 966 S.W.2d at 519. This objective standard looks at the police officer's conduct and "takes into account the facts and circumstances known to the police at the time of the search." *Brimage*, 918 S.W.2d at 501 (citing *Garcia v. State*, 827 S.W.2d 937 (Tex.Crim.App.1992); *Janicek v. State*, 634 S.W.2d 687, 691 (Tex.Crim.App.1982)); *Colburn*, 966 S.W.2d at 519. Furthermore, we look to ensure that the warrantless search is "strictly circumscribed by the exigencies which justify its initiation." *Mincey*, 437 U.S. at 393, 98 S.Ct. at 2413; *Bass v. State*, 732 S.W.2d 632, 635 (Tex. Crim.App.1987). If the emergency doctrine applies, the police may seize any evidence that is in plain view during the course of their legitimate emergency activities. *Mincey*, 437 U.S. at 393, 98 S.Ct.

2408 (citations omitted); *Brimage*, 918 S.W.2d at 501. "The fact that the protection of the public might, in the abstract, have been accomplished by 'less intrusive' means does not, by itself, render the search unreasonable." *Cady*, 413 U.S. at 447, 93 S.Ct. 2523.

 Although we disapprove of the court of appeals' analysis using the *Rohrig* factors, we nonetheless agree with the court's conclusion that Deputy Quiser's actions in entering the home to ensure the well-being of the young child were reasonable under the circumstances. Quiser's actions were "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *Cady*, 413 U.S. at 441, 93 S.Ct. 2523. The appellant had already been detained for suspicion of committing criminal mischief. Quiser did not enter appellant's trailer to continue his investigation of that offense. Instead, he saw two young boys, not belonging to the appellant, emerge from appellant's darkened trailer sometime after midnight, and then witnessed one of the boys run back into the trailer. Quiser testified that because the appellant was going to jail, it was his responsibility to get the boy out of the trailer

---

**4.** Those factors include: (1) whether immediate government action was required; (2) whether the government interest was sufficiently compelling to justify a warrantless intrusion; and (3) whether the citizen's expectation of privacy was diminished in some way. *Rohrig*, 98 F.3d at 1521.

**5.** The court of appeals' reliance on *Rohrig* is misplaced. *Rohrig* is an unique *exigent circumstances* case, not an *emergency doctrine* case. *Rohrig* involved officers making a warrantless entry into the defendant's home after they received a complaint of loud noise emanating from inside. *Rohrig*, 98 F.3d at 1509. The court refused to invoke the *emergency doctrine* noting that the only exigency presented was a breach of the peace; there was no substantial or immediate threat to a person's

safety, unlike the circumstances of this case. *See id.* at 1519. Instead, the court embarked on a "hybridized" *exigent circumstances* analysis, setting forth the factors listed above. The court considered the officers' *community caretaking functions* only in a limited manner, related solely to the second factor of their "test"—weighing whether there was a sufficiently compelling government interest to justify a warrantless intrusion. *See id.* at 1521. The community caretaking functions the officers were serving in *Rohrig*: locating and abating a nuisance in order to "restore the neighbors' peaceful enjoyment of their homes and neighborhood." *Id.* This is much different than the function of acting to protect and preserve life and prevent substantial injury.

and find out who his parents were. Arguably, the deputies would have been criminally liable for leaving the child behind. *See* TEX. PENAL CODE § 22.041 (West 2003) (abandoning or endangering child). Under the circumstances, Deputy Quiser's actions were reasonable.

■■■ More important to the emergency doctrine's application, there was an immediate, objectively reasonable belief on Deputy Quiser's part that he needed to act to protect the life of the child and prevent him from incurring serious injury. Although there was no immediate threat to the child's safety or well-being, had the boy been left alone in the trailer while deputies took appellant away, there would have been a substantial risk of harm to the child. Furthermore, Deputy Quiser's search was "strictly circumscribed" by the exigencies which justified its initiation. *Mincey*, 437 U.S. at 393, 98 S.Ct. 2408. After the boy ran back in the trailer, Quiser called out for him but there was no response. Quiser then proceeded directly to where he was told the boy was—the back bedroom. When he found the boy there, he also saw the pornographic photos in plain view. Rather than expand his search for pornographic material, he immediately took the child out of the room. Based on these circumstances, we find that the emergency doctrine applies. Accordingly, the deputies were not required to secure a warrant to enter and search appellant's residence.

We do not intend our holding today to be interpreted to necessarily allow police officers to make warrantless entries and searches every time there is a need to protect or preserve life or prevent serious injury. Instead, the courts should carefully apply the objective standard of reasonableness when determining whether an officer's warrantless entry and search is justified under the emergency doctrine.

Having done so in this case, we overrule appellant's ground for review.

The judgment of the Court of Appeals is affirmed.

MEYERS, J., filed a concurring opinion, in which PRICE, J., joined.

WOMACK, J., filed a concurring opinion.

JOHNSON, J., filed a concurring opinion.

MEYERS, J., concurring in which PRICE, J., joined.

A warrantless search is unreasonable *per se* unless it comes within one of the "jealously and carefully drawn" exceptions to the warrant requirement. *Hudson v. State*, 588 S.W.2d 348, 351 (Tex.Crim.App. 1979), *quoting Jones v. United States*, 357 U.S. 493, 499, 78 S.Ct. 1253, 2 L.Ed.2d 1514 (1958). The majority here goes to some lengths to explain a few of those exceptions, and concludes that the search in this case was justified under the "emergency" doctrine, apparently a subclass of the "community caretaking" doctrine. In so concluding, the majority has expanded the application of the community caretaking doctrine to include warrantless searches of private residences whenever such a search is "objectively reasonable" as a part of the police officer's duty "to protect and preserve life and prevent substantial injury."

This vague and expansive application of the community caretaking doctrine runs directly contrary to this Court's admonition in *Wright v. State*, 7 S.W.3d 148, 152 (Tex.Crim.App.1999), that such warrantless searches of private property should be justified under the doctrine "[o]nly in the most unusual circumstances."

Although the effect of the majority's holding is to significantly widen the scope

of the community caretaking doctrine, the opinion fails to explain why such a stretch is called for, given the clear applicability of another major exception to the warrant requirement. A search conducted with the consent of the suspect, if the consent is voluntarily given under the totality of the circumstances, is a well-established exception to the warrant requirement. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).

This Court has ruled that under certain circumstances, a consent to search can be effective even if given *after* an illegal search has already been performed. *Compare Reasor v. State*, 12 S.W.3d 813 (Tex. Crim.App.2000) (under totality of circumstances, consent to search was voluntary even though officers had already performed an illegal protective sweep), with *Gonzalez v. State*, 588 S.W.2d 355 (Tex. Crim.App.1979) (consent to search was not voluntary because it was obtained through the continuous exploitation of a prior illegal search). The important factor in evaluating the effectiveness of a consent to search is whether it was *voluntarily given*. The officer's subjective reason for *asking* appellant for consent to search is inconsequential, and it is not necessary to justify the request under any doctrine. The community caretaking doctrine should only be employed in the absence of a valid consent to search.

In this case, no evidence was taken during the first entry into appellant's residence. The evidence in question was seized only after appellant consented to the search. The question of the officers'

reasons for seeking that consent was not raised until the majority necessarily opened the door to that area of inquiry.[1] Although the majority cites cases holding that the proper test for determining whether a search was justified is one of objective reasonableness, they ignore the fact that appellant's consent to the search provided just such an objectively reasonable justification. *See Walter v. State*, 28 S.W.3d 538 (Tex.Crim.App.2000)(subjective intent of officer to perform search was irrelevant given application of plain view doctrine); *Garcia v. State*, 827 S.W.2d 937 (Tex.Crim.App.1992)(subjective motive of officer performing traffic stop and arrest was irrelevant, where appellee committed traffic offense).

The majority ignores the plain fact that appellant does not here challenge the consent to search. By relying instead on the community caretaking doctrine to validate the pre-consent entry, the majority engages in an unnecessary examination of the officer's subjective motivation for acquiring the consent to search.[2]

The trial court in this case found that appellant consented to the search of his trailer. The Court of Appeals upheld the finding that appellant's consent to search was freely and voluntarily given. *Laney v. State*, 76 S.W.3d 524, 533 (Tex.App.–14th Dist., Houston 2002). Appellant did not contest that finding on petition for discretionary review, and did not argue that the consent was in any way tainted by the prior search.

---

**1.** I would presume that the law has now changed to require the State to verify that their request to search is not influenced or brought about by any illegal activities, either by themselves or any other persons. *See Johnson v. State*, 871 S.W.2d 744 (Tex.Crim. App.1994); Tex.Code Crim. P. Art. 38.23.

**2.** It is not difficult to imagine that the same reasoning could be extended to require an inquiry into how probable cause was acquired in other circumstances. Must we now examine the source of any information relied on by a magistrate as the basis for probable cause to issue a warrant?

Because the issue was not argued before this Court, we have no occasion to consider it. Therefore, although I object to the uncalled-for extension of the community caretaking doctrine, I must concur with the majority's decision to affirm the judgment of the Court of Appeals.

WOMACK, J., filed a concurring opinion.

I join the Court's opinion with the understanding that it is limited to the Fourth Amendment, as it applies to our state's courts through the Due Process Clause of the Fourteenth Amendment of the United States Constitution—specifically to the "warrant requirement" that the Supreme Court has found the Fourth Amendment to embody. The exceptions to that requirement for "emergencies," "exigencies," and "community caretaking" that the Court's opinion parses are part of the "jurisprudential mare's nest" in Fourth Amendment law that the Supreme Court has created by finding a general requirement of a warrant to which there are exceptions.[1] This concept has nothing to do with article I, section 9 of the Texas Constitution which does not embody a warrant requirement, as we held several years ago.[2] "It [was] our holding that Article I, Section 9 of the Texas Constitution contains no requirement that a seizure or search be authorized by a warrant, and that a seizure or search that is otherwise reasonable will not be found to be in violation of that section because it was not authorized by a warrant."[3] Our decision specifically applied to the concept of a community-caretaking exception under article I, section 9.[4]

In the courts below the appellant cited both federal and state constitutions, but he did not contend that they impose different requirements as to warrants, and the court of appeals did not consider whether they do. Therefore there is no occasion for us to do so.

JOHNSON, J., filed a concurring opinion.

I concur in the judgment of the Court. The court of appeals' opinion did not mention that the record shows that the officers knew before they arrested appellant that the two boys were the sons of appellant's girlfriend. There is no indication that officers made any attempt to contact the mother before entering appellant's home to retrieve the second boy. This makes the legality of the first entry a much closer case.

We do not know whether the boys' mother knew of appellant's prior convictions. We do know that the boys were not at their own home and it was after midnight. The officers faced a situation in which, through ignorance of appellant's prior sexual offenses or disregard of the dangers posed by a sexual predator, the boys' mother allowed them to be alone with appellant. It was not unreasonable for the officers to believe that it was important to retrieve the second boy from appellant's home.

1. *See Hulit v. State,* 982 S.W.2d 431, 436 (Tex.Cr.App.1998).

2. *See id.*

3. *Id.,* at 436.

4. *Id.,* at 438 ("We hold that Article I, Section 9 of the Texas Constitution was not violated

by [the police officers'] actions. We do this, not by finding that there is a community caretaking exception to a warrant requirement, but by asking whether, from the totality of the circumstances, after considering the public and private interests that are at stake, their action was an unreasonable seizure").

I am troubled, however, by the second warrantless and unconsented-to entry. Whether the officers touched anything during the entry is not the issue. The boys were safe, and no other emergency existed. There was no legal justification for the second entry. The opinion of the Court should not be read to condone such improper entries and searches.