The STATE of Texas, Appellant,

v.

Natasha AMARELLE, Appellee.

No. 05–04–00346–CR.

Court of Appeals of Texas,
Dallas.

Jan. 4, 2005.

John R. Roach, Plano, Jeffrey Garon, for
appellant.

Peter Barrett, Moore Gunter & Barrett, Dallas, for appellee.

Before Justices WHITTINGTON, BRIDGES, and FRANCIS.

## OPINION

Opinion by Justice BRIDGES.

The State of Texas appeals the trial court's order granting appellee's pretrial motion to suppress evidence obtained in a search of appellee's purse. In three issues, the State argues the police legitimately searched appellee's purse to obtain information relevant to her identity, the trial court improperly concluded the object obtained from appellant's purse was not contraband in plain view, and appellee's indication of the location of her purse was not an incriminating statement. We reverse the trial court's order and remand for further proceedings.

On April 30, 2003, Lance Camp was in his apartment watching television when an acquaintance came over and told him appellee was next door and was not feeling well. Camp was friends with the four men who lived in the apartment next door, and he had seen appellee visiting them five or six times. Camp went next door and found appellee looking tired and "passing out" on the couch in the living room. Appellee told Camp she took GHB (gamma hydroxybutyric acid), and Camp became concerned that appellee had taken too much of some type of drug. Camp called 911. Plano police officer Brian Pfahning responded to the call and was admitted to the apartment upon his arrival. Pfahning spoke to Camp, who told him appellee had come to the apartment, stated she had possibly overdosed, and told Camp she had taken GHB and was afraid she was going to die. Pfahning, a former paramedic, tried to talk to appellee, but she made no response when Pfahning asked for her name and asked how she was doing. Based on his previous experience, Pfahning knew that GHB can act differently on different people and that appellee "could be in some serious trouble." At that time, Pfahning was only able to identify appellee as "Natasha."

Plano police officer Christopher Tyler arrived at the apartment, and Pfahning went outside to appellee's car to look for her identification, any indication that appellee had attempted suicide by taking drugs, or other evidence that would clarify what had happened to appellee. Pfahning did not find anything in the car, but Tyler located appellee's purse on the kitchen counter. The purse was open. Tyler looked inside and saw a college identification card and a clear bottle with a red cap containing clear liquid. Tyler had seen GHB before, and he thought the bottle was a container of GHB and told Pfahning. Pfahning looked in appellee's open purse, saw the bottle, and believed the substance inside to be GHB. Pfahning took the bottle out of the purse and showed it to appellee. Appellee did not respond at first to Pfahning's questions concerning what she had taken, but she eventually stated she normally takes GHB. Although she stated she normally measures the GHB, she said she did not measure it and thought she had taken too much. As a result, she went to her friends' apartment so she would not be alone.

Representatives from the fire department arrived, and Pfahning told them what he knew about the situation. Appellee stated she did not want to go to the hospital, and she became argumentative. Pfahning explained to appellee that she needed to go to the hospital, and drug charges could be taken care of at a later time. If appellee chose not to go to the hospital, Pfahning explained, he would have to arrest her for possession of GHB

in order to get her to the hospital. Appellee consented to go to the hospital and, with assistance, walked to a stretcher, but she ran out the door instead of getting on the stretcher. Tyler and Pfahning caught appellee in the courtyard outside and arrested her. Appellee was charged with possession of GHB. Following a hearing on appellee's motion to suppress the GHB, the trial court granted the motion, and the State filed this appeal.

■ In its first issue, the State argues the trial court erred in granting appellee's motion to suppress. Specifically, the State argues the officers were permitted to search appellee's purse under the emergency doctrine. We first note that, when reviewing a motion to suppress, we give great deference to the trial court's findings of historical facts. *Laney v. State*, 117 S.W.3d 854, 857 (Tex.Crim.App. 2003) (citing *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App.1997)). We review de novo mixed questions of law and fact that do not turn on an evaluation of credibility and demeanor. *Laney*, 117 S.W.3d at 857; *Guzman*, 955 S.W.2d at 89. Furthermore, we sustain the trial court's ruling admitting or excluding evidence if the ruling is reasonably supported by the record and correct on any theory of law applicable to the case. *Laney*, 117 S.W.3d at 857 (citing *Willover v. State*, 70 S.W.3d 841, 845 (Tex.Crim.App.2002)).

■ The emergency doctrine applies when the police are acting, not in their "crime-fighting" role, but in their limited community caretaking role to "protect or preserve life or avoid serious injury." *Laney*, 117 S.W.3d at 861 (quoting *Mincey v. Arizona*, 437 U.S. 385, 392, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978)). Under the emergency doctrine, the Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid. *Laney*, 117 S.W.3d at 860 (citing *Mincey*, 437 U.S. at 392, 98 S.Ct. 2408). The community caretaking function, however, is totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute, and a police officer may not properly invoke his community caretaking function if he is primarily motivated by a non-community caretaking purpose. *Corbin v. State*, 85 S.W.3d 272, 276–77 (Tex.Crim.App.2002).

Here, Pfahning was called to the apartment by Camp, the apartment resident's neighbor. Camp indicated appellee had taken GHB, and Pfahning believed appellee's behavior was consistent with that of someone who had ingested too much GHB. However, appellee could not respond to Pfahning's questions concerning what she had taken or who she was. From questioning the apartment occupants, Pfahning was able to identify appellee as "Natasha," but he was unable to determine her last name. When Tyler arrived, Pfahning looked in appellee's car to see if there was evidence of what substances she had ingested or evidence that she had attempted suicide.

While Pfahning was outside, Tyler located appellee's purse on the kitchen counter. The purse was open, and Tyler looked inside and saw a college identification card and a clear bottle with a red cap containing clear liquid. Tyler had seen GHB before, and he thought the bottle was a container of GHB. Once Pfahning came back inside the apartment, Tyler showed him the identification and told him about the bottle in appellee's purse. Pfahning looked in the purse and saw a clear plastic bottle of a type that he had seen used as a container for GHB on other occasions. Pfahning worked with rescue personnel to ensure appellee went to the hospital for treatment and only arrested appellee after she attempted to flee.

Giving great deference to the trial court's findings of fact, the record shows the trial court found the officers in this case "performed their caretaker function both when they called the EMS and when they looked in the purse, having determined there was nothing inconsistent with GHB." Both Tyler and Pfahning saw the bottle containing what they believed to be GHB in plain view in appellee's purse. Police may seize any evidence that is in plain view during the course of their legitimate emergency activities. *Mincey*, 437 U.S. at 393, 98 S.Ct. 2408; *Laney*, 117 S.W.3d at 862; *Brimage v. State*, 918 S.W.2d 466, 501 (Tex.Crim.App.1996). After reviewing the record, we conclude the record shows that Tyler's and Pfahning's search of appellee's purse was justified under the emergency doctrine. *See Mincey*, 437 U.S. at 392, 98 S.Ct. 2408; *Laney*, 117 S.W.3d at 860. Having looked in appellee's purse as part of their caretaker function, the officers were justified in seizing the container of GHB in plain view inside the purse. *See Mincey*, 437 U.S. at 393, 98 S.Ct. 2408; *Laney*, 117 S.W.3d at 862; *Brimage*, 918 S.W.2d at 501. Accordingly, the trial court abused its discretion in granting appellee's motion to suppress on the basis that, though the officers were acting in their caretaking function when they looked in appellee's purse and saw the GHB in plain view, they were unjustified in seizing the GHB. *See Laney*, 117 S.W.3d at 857. We sustain the State's first issue. Because of our disposition of the State's first issue, we need not address the State's second and third issues.

We reverse the trial court's order suppressing the GHB evidence and remand for further proceedings.