NO. 07-06-0099-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

OCTOBER 9, 2007

_____

CHARLES RAY GIBSON, JR., APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 121ST DISTRICT COURT OF TERRY COUNTY;

NO. 5273; HONORABLE KELLY G. MOORE, JUDGE

_____

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

**CONCURRING OPINION**

I agree with the majority's conclusion (footnote 3) that the trial court erred in failing to submit an instruction to the jury in accordance with article 38.23 of the Texas Code of Criminal Procedure; and, therefore, to the extent that the majority concludes that the judgment should be reversed, I concur. I respectfully disagree, however, with the conclusion that the trial court erred in denying Appellant's Motion to Suppress. Considering the totality of the

evidence, I would conclude that Officer Carrillo was justified in stopping Appellant based upon a reasonable exercise of the community caretaking function.

The temporary detention of an individual during the stop of a motor vehicle by the police, even if only for a brief period and for a limited purpose, constitutes a "seizure" of that person within the meaning of the Fourth Amendment, *Whren v. United States,* 517 U.S. 806, 809-10, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996), and both the Fourth Amendment to the United States Constitution and article 1, section 9 of the Texas Constitution require that the seizure be reasonable. The reasonableness of a given seizure depends upon a balance between the public interests and the individual's right to personal security free from arbitrary interference. *Brown v. Texas,* 443 U.S. 47, 51, 99 S.Ct. 2637, 2640, 61 L.Ed.2d 357(1979). The constitutionality of a seizure involves balancing three factors: (1) the gravity of the public interest, (2) the degree to which the seizure advances the public interest, and (3) the severity of the interference with individual liberty. *Id.* 443 U.S. at 51-52. As a general principle, the decision to temporarily stop a motor vehicle is constitutionally reasonable where the police have probable cause to believe that the stop is necessary to locate and secure a missing child under the "community caretaking" exception to the Fourth Amendment.

Community Caretaking Function

The term "community caretaking function" was first used by the Supreme Court in *Cady v. Dombrowski,* 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973). In that case, a law enforcement officer made a warrantless search of a vehicle that had been involved in an accident to determine if his service revolver had been accidently dropped in the vehicle during

2

the course of an accident investigation. In finding that the search was constitutionally reasonable, the Court recognized that police officers frequently investigate accidents in which there is no claim of criminal activity and concluded that a search which was totally divorced from the detection, investigation, or acquisition of evidence relating to criminal activity could be a permissible *community caretaking function.* Relying on *Cady* the Texas Court of Criminal Appeals recognized the community caretaking function as an exception to the Fourth Amendment's warrant requirement. *Wright v. State,* 7 S.W.3d 148, 151 (Tex.Crim.App. 1976). The application of that exception is, however, to be narrowly applied, given the totality of the circumstances. *Laney v. State,* 117 S.W.3d 854, 858-59 (Tex.Crim.App. 2003). In *Wright* the Court set forth four factors to consider in determining whether or not the police activity was constitutionally premissible.[1]

In applying the first *Wright* factor, the majority focuses upon the nature and level of distress exhibited by C.W. in determining whether the stop of Appellant was justified as an objective exercise of the community caretaking function.[2] C.W.'s mother and legal guardian,

---

[1]The factors set forth in *Wright* are as follows: (1) the nature and level of the distress exhibited by the individual; (2) the location of the individual; (3) whether or not the individual was alone and/or had access to assistance independent of the assistance offered by the officer; and (4) to what extent the individual, if not assisted, would present a danger to himself or others. *Id.* at 152.

[2]In its analysis of the trial court's ruling on the Motion to Suppress, the majority assumes, without deciding, that the community caretaking function justifies the seizure of an individual other than the individual believed to be in need of assistance. To the extent that the majority opinion casts doubt on this assumption, I would specifically hold that objective application of the community caretaking function makes no distinction between the individual detained and the individual in distress so long as the detention is incident to and a necessary part of the officer's reasonable exercise of that function. In this case, the detention of Appellant was incident to and a necessary part of Officer Carrillo's attempt to respond to C.W.'s mother's request for public assistance for the perceived safety of the minor child.

3

Rose Waitman, had reported C.W., a minor child, as missing and as a possible run-away. At the time and under the circumstances surrounding the stop, the officer knew that the missing person was a 15 year old female, that she was suspected to be in the company of a 30 year old man,[3] and that she was suspected to be in a specifically identified motor vehicle. Under those circumstances, Officer Carrillo's failure to stop that specific vehicle and investigate the whereabouts and condition of the juvenile in question would have been a dereliction of his duty to "serve and protect" the public.

In its analysis of the second factor, the majority concludes that the proximity of the juvenile's residence to the location of the stop militates against the stop being reasonable. In doing so, the majority fails to also consider the fact that Officer Carrillo had attempted to initiate the stop several blocks from the residence and that another patrol vehicle had even "pulled to the side to see if we could slow the vehicle" before they were able to effectuate the stop. Furthermore, the vehicle's proximity to C.W.'s residence is only as relevant as Officer Carrillo's knowledge that Appellant was intent on delivering the child to her residence. Officer Carrillo specifically testified that he was not sure of Appellant's intentions and the trial court was in the position to judge the weight and credibility of that testimony. Just as reasonably, it could be argued that the second *Wright* factor, the *location* of the person in perceived danger, was the very purpose of the stop, *i.e.* determination of the *location* of the minor child.

---

[3]Officer Carrillo testified that he had previous encounters with Appellant. Although there is no direct testimony that at the time of the original stop, Officer Carrillo had knowledge of Appellant's prior felony record, we do know that he was aware of the fact that Appellant did not have a driver's license and it is reasonable to assume that Appellant's felony record may have been made known to Officer Carrillo.

The majority considers the third factor a non-factor because Officer Carrillo could not identify the individuals in the vehicle. Again, the purpose of the stop was to determine the safety of a minor child and the circumstances of the stop in question support the trial court's implicit determination that the stop was reasonable and necessary to determine the location, safety and welfare of the child. In its analysis of the fourth factor, the majority concludes that the record provides no evidence that C.W. was in danger. When the welfare of a child is at stake, the perception of danger is just as real and just as important as the actual danger to which the child is exposed. Rose Waitman perceived C.W. to be in danger and she sought the assistance of law enforcement to protect her child.

Based upon my analysis of the four *Wright* factors, I would reach a conclusion contrary to the conclusion reached by the majority in that I would find that the evidence establishes that Officer Carrillo had probable cause to believe that a missing child would be located in the specific vehicle stopped and that the stop of Appellant's vehicle was an objectively reasonable exercise of the community caretaking function and, therefore, constitutionally permissible.

Finally, although I believe that the stop here was permissible under the community caretaking exception discussed in *Cady* and *Wright,* it could be argued that the information available to Officer Carrillo might well have justified a brief investigatory detention based upon reasonable suspicion under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Applying the factors from *Brown*, (1) the public concern served was the safety and welfare of a minor child, (2) the brief investigatory stop advanced that concern by establishing or eliminating whether the missing child was in a specific vehicle, and (3) the severity of the

interference was minimal. Officer Carrillo was not stopping every citizen on the streets. Instead, he had probable cause to believe that this specific vehicle might reasonably contain the missing minor child. In a world of increasing awareness and sensitivity to crimes against children, and in a society where "Amber Alert" laws have been enacted to assist law enforcement in the recovery of missing children,[4] the limited intrusion of a brief traffic stop under circumstances like those present in this case cannot easily be seen as unlawful. Accordingly, I would find that the trial court did not err in denying Appellant's Motion to Suppress.

Patrick A. Pirtle
Justice

Publish.

---

[4]Texas Gov't Code § 411.351 *et seq.* (Vernon 2003).