COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

JOSE GUADALUPE VILLANUEVA, § 

§ No. 08-08-00140-CR

Appellant, § 

§ Appeal from the

v. § 

§ 199th District Court

THE STATE OF TEXAS, § 

§ of Collin County, Texas

Appellee. § 

§ (TC# 199-81252-07)

§ 

## O P I N I O N

Appellant, Jose Villanueva, was indicted for possession of heroin in an amount of less than one gram. Following the trial court's denial of his motion to suppress, Appellant entered into a plea-bargain agreement with the State for three years of deferred adjudication. The trial court accepted the agreement and assessed sentence accordingly. On appeal, Appellant brings two issues challenging the trial court's denial of his motion to suppress the heroin seized from his residence. We affirm.

## BACKGROUND

On December 19, 2006, Deputy Redwine was dispatched to Appellant's residence in reference to an emergency call that claimed Appellant was unresponsive and not breathing.[1] Upon arrival, Redwine noted EMS, who arrived two minutes earlier, was already assessing the medical situation. Redwine attempted contact with Appellant, but recognizing he was unresponsive, Redwine backed away and allowed EMS to treat Appellant. At that time, Redwine did not know

---

[1] Although not clear from the record, it appears Appellant resided in a detached structure apart from the main house, which contained a bedroom and a bathroom.

what caused Appellant's medical conditions, nor did he have any suspicions. Redwine did not know if Appellant would make it and felt he was in need of immediate aid.

When Redwine moved out of the way, he saw, in plain view, a partially folded, tarnished manilla piece of paper on top of the window air-conditioning unit. Based on the way it was folded, Redwine believed the paper contained narcotics. Tipping his head, Redwine could see a powdery substance inside, and when he lifted the corner of the paper a little more, Redwine saw that it contained what appeared to be ground-up oatmeal. Believing the substance to be narcotics, Redwine seized it and field-tested it for cocaine and methamphetamine, both of which were negative. Subsequent analysis, however, revealed that the substance was heroin.

## ANALYSIS

Appellant raises two issues stemming from the trial court's denial of his motion to suppress the heroin seized from atop the window air-conditioning unit.[2] His first issue alleges Redwine had no authority to enter the residence, and his second issue asserts the heroin was not found in plain view. We disagree with both contentions.

### Standard of Review

We review a trial court's ruling on a motion to suppress under an abuse-of-discretion standard. *See Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996). At the suppression hearing, the trial court, as the sole fact finder, may choose to believe or disbelieve any or all of the witnesses' testimony. *Alvarado v. State*, 853 S.W.2d 17, 23 (Tex. Crim. App. 1993). We therefore

---

[2] Once Appellant was transported to the hospital, Redwine searched the residence for other drugs and found a hollow pen he believed Appellant used as drug paraphernalia. The State conceded that the pen should be suppressed, and consequently, any search conducted after EMS and Appellant left the residence is not at issue on appeal.

afford almost total deference to the trial court's determination of historical facts when supported by the record, particularly if those findings turned on witness credibility and demeanor. *State v. Ross*, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000); *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). That same deference is accorded to determinations of mixed questions of law and fact when their resolution depended on witness credibility and demeanor. *Ross*, 32 S.W.3d at 856. However, mixed questions of law and fact that do not turn on witness credibility and demeanor are reviewed *de novo*. *Id*. When the trial court fails to issue findings of fact, we assume those implicit fact findings that support the trial court's ruling, if those findings are supported by the record. *Carmouche*, 10 S.W.3d at 327-28.

*Officer's Authority to Enter Residence*

Although the Fourth Amendment guarantees the right to be secure against unreasonable searches, it does not bar officers from making warrantless entries and searches when they believe a person inside is in need of immediate aid. *See* U.S. CONST. amend. IV; *Mincey v. Arizona*, 437 U.S. 385, 392, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978); *Shepherd v. State*, 273 S.W.3d 681, 683-84 (Tex. Crim. App. 2008). Under the emergency doctrine, officers may engage in conduct that would otherwise violate the Fourth Amendment so long as they are acting under a reasonable belief that their actions are immediately necessary to protect or preserve life or avoid serious injury. *Mincey*, 437 U.S. at 392; *Shepherd*, 273 S.W.3d at 684; *Laney v. State*, 117 S.W.3d 854, 858 (Tex. Crim. App. 2003). The doctrine applies when the police are acting, not in their "crime-fighting" role, but in their limited community-caretaking role to "'protect or preserve life or avoid serious injury.'" *Laney*, 117 S.W.3d at 861 (quoting *Mincey*, 437 U.S. at 392). That community-caretaking role, however, is totally divorced from the detection, investigation, or acquisition of evidence relating to

3

the violation of a criminal statute, and an officer may not properly invoke his community-caretaking role if he is primarily motivated by a noncommunity-caretaking purpose. *Corbin v. State*, 85 S.W.3d 272, 276-77 (Tex. Crim. App. 2002); *State v. Amarelle*, 190 S.W.3d 1, 3 (Tex. App.–Dallas 2005, no pet.).

Whether an actual emergency existed at the time of the officers' warrantless entry is irrelevant. *Brimage v. State*, 918 S.W.2d 466, 482 (Tex. Crim. App. 1994). Rather, the State need only show that the facts and circumstances surrounding the entry and search were such that the officers reasonably believed an emergency existed that made obtaining a search warrant impracticable. *Id*. The officers' actions are reviewed under an objective standard, taking into account the facts and circumstances known to the police at the time of the warrantless entry. *Brigham City, Utah v. Stuart*, 547 U.S. 398, 126 S.Ct. 1943, 164 L.Ed.2d 650 (2006); *Laney*, 117 S.W.3d at 862.

Initially, Appellant asserts that since the call was made to the fire department and not to the police, the caller did not consent to any response from law-enforcement officers. Thus, Appellant concludes that Redwine's sole purpose in being at his residence was to conduct a criminal investigation, not to render immediate aid. However, the record reflects that the call was made to 911, and that 911 dispatched EMS and the deputy. By calling 911, the caller impliedly consented to Redwine's arrival and entry. *See Johnson v. State*, 226 S.W.3d 439, 444 (Tex. Crim. App. 2007) ("[W]hen a homeowner makes a 911 call and requests immediate assistance because of an emergency, he is indicating his consent to (1) the arrival and entry of the responding officers to resolve that emergency and, (2) absent any evidence of the revocation of that consent, an objectively reasonable limited investigation by the responding officers into the emergency that the homeowner

4

reported.").

Further, Redwine testified that he responded to the call, not to conduct a criminal investigation, but to fulfill the Sheriff's Department's function of saving lives. Redwine repeatedly denied that he responded for purposes of performing a criminal investigation. The trial court was entitled to believe Redwine's testimony. *Ross*, 32 S.W.3d at 855; *Garcia v. State*, 15 S.W.3d 533, 535 (Tex. Crim. App. 2000).

Appellant next contends that once EMS responded, any "police" emergency was nonexistent, and therefore, Redwine lacked authority to enter the premises under the emergency doctrine. Appellant relies on *Root v. Gauper*, 438 F.2d 361 (8th Cir. 1971), and *Bray v. State*, 597 S.W.2d 763 (Tex. Crim. App. 1980), to support his contention. The holdings in those cases, which we find inapposite to the case at hand, stand for the proposition that officers cannot rely on the emergency doctrine to enter residences for the first time after the emergency is resolved. *See Root*, 438 F.2d at 363 (police, en route to residence, passed ambulance taking murder victim to hospital); *Bray*, 597 S.W.2d at 768 (police arrived at residence after medical personnel assessed situation, concluded there was no emergency, and left). Here, however, EMS arrived at the residence only two minutes before Redwine and was assessing the medical situation. What "assessing the medical situation" meant was not developed, and that terminology could include anything from visual observation of the room and location of the Appellant, speaking to witnesses, obtaining medical equipment from their vehicle, or examining Appellant. Based on Redwine's testimony that he attempted contact with Appellant before he backed away to allow EMS to treat him, the trial court could have reasonably concluded that Redwine attempted emergency contact with Appellant first. *See Amador v. State*, 275 S.W.3d 872, 879 (Tex. Crim. App. 2009) (although there was no explicit testimony as to how

5

defendant performed on field-sobriety tests, appellate court must find trial court inferred a bad performance since officer arrested defendant afterwards). In short, affording due deference to the trial court's implicit findings, we believe the trial court could have reasonably determined that the emergency was still on-going when Redwine arrived, and because the facts known to Redwine indicated that there was a nonbreathing, unresponsive person inside, Redwine believed the emergency had not been resolved and he lawfully entered the residence under the emergency doctrine to render immediate aid. *See Welmaker v. State*, 941 S.W.2d 241, 243 (Tex. App.–Corpus Christi 1996, pet. ref'd) (warrantless entry of hotel room justified when police and EMS, who were responding to an emergency 911 call and arrived at the hotel room together, had reason to believe that a person inside was in need of immediate aid).

Finally, Appellant contends that because Redwine could not recall whether EMS was working on him inside or outside of the residence when he arrived, we should infer that everyone was outside, and therefore, Redwine should not have entered his residence. However, Appellant's position is contrary to settled law. We must infer those fact findings that would support the trial court's ruling, and when, as here, the officer's testimony was conflicting, we assume the trial court, who was in the better position to evaluate his testimony, including deciding which portions to believe, accepted that portion of Redwine's testimony inferring he was inside the house, standing next to the window unit and the EMS officials, as they were treating Appellant. *Ross,* 32 S.W.3d at 856; *Carmouche*, 10 S.W.3d at 327-28.

Giving due deference to the trial court's implicit fact findings, we believe the trial court could have properly determined that Appellant, unresponsive and not breathing, was inside his residence and in need of immediate aid when Redwine arrived. Therefore, we find Redwine's entry lawful

6

under the emergency doctrine and overrule Appellant's first issue.

*Plain View*

In his second issue, Appellant asserts Redwine's seizure of the heroin was not justified under the plain-view exception. Specifically, he contends that Redwine had no right to be in the residence once he backed away and allowed EMS to treat him and that it was not immediately apparent that the piece of paper contained illegal narcotics.

The plain-view exception allows an officer the ability to lawfully seize evidence if: (1) the officer, being in a location where he has a right to be, observes evidence in plain view; and (2) the incriminating nature of the evidence is immediately apparent. *See Horton v. California*, 496 U.S. 128, 136-37, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990), *citing Arizona v. Hicks*, 480 U.S. 321, 326-27, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987); *Coolidge v. New Hampshire*, 403 U.S. 443, 466, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971) (plurality op.); *Martinez v. State*, 17 S.W.3d 677, 685 (Tex. Crim. App. 2000). When the emergency doctrine applies, the police may seize any evidence that is in plain view during the course of their legitimate emergency activities. *Laney*, 117 S.W.3d at 862; *Rauscher v. State*, 129 S.W.3d 714, 719 (Tex. App.–Houston [1st Dist.] 2004, pet. ref'd).

Appellant focuses on the fact that Redwine was not a doctor and did not participate in his treatment; therefore, he concludes that any emergency for Redwine ceased once he allowed EMS to begin their treatment. In short, Appellant contends that Redwine no longer had the right to be in his residence. However, Redwine testified that he saw the piece of paper "*as [he] was getting out of the EMS personnel's way.*" (Emphasis added). In other words, Redwine's simultaneous act of observing the piece of paper as he moved out of the way, from a place we already determined Redwine had a right to be, was still within the course of his legitimate emergency activities. *See*

7

*Laney*, 117 S.W.3d at 862; *White v. State*, 201 S.W.3d 233, 243 (Tex. App.–Fort Worth 2006, pet. ref'd).

Appellant also asserts that it was not immediately apparent that the piece of paper contained incriminating evidence. Redwine, however, testified that the piece of paper was partially unfolded and that if he tipped his head, he could see a powdery substance inside without unfolding it further. Believing that the paper was packaged in a manner evincing narcotics, the trial court could have reasonably determined that it was immediately apparent to Redwine that the paper contained illegal narcotics. *See Martinez*, 17 S.W.3d at 685 (where item is in plain view of law-enforcement officials at vantage point where they have right to be, and it is immediately apparent there is probable cause to associate item with criminal activity, officials may seize item); *see also Texas v. Brown*, 460 U.S. 730, 742-43, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983) (knotted opaque balloons seen in plain view in car during driver's license checkpoint were immediately apparent to trained eye of officer that balloons contained narcotics); *Lopez v. State*, 223 S.W.3d 408, 417 (Tex. App.–Amarillo 2006, no pet.) (plastic baggie visible in crease of gas cap was immediately apparent to officer that the baggie contained evidence of a crime).

Accordingly, we hold Redwine observed evidence in plain view from a location where he had a right to be and that the incriminating nature of the evidence was immediately apparent. *Horton*, 496 U.S. at 136-37. Therefore, Redwine lawfully seized the heroin under the plain-view exception, and we overrule Appellant's second issue.

## CONCLUSION

Having overruled Appellant's two issues, we affirm the judgment of the trial court.

GUADALUPE RIVERA, Justice

March 17, 2010

Before Chew, C.J., McClure, and Rivera, JJ.

(Do Not Publish)