COURT OF APPEALS









COURT
OF APPEALS

EIGHTH
DISTRICT OF TEXAS

EL
PASO, TEXAS

 

ANTONIO DOMINGUEZ MARTINEZ,             )

                                                                              )               
No.  08-04-00048-CR

Appellant,                          )

                                                                              )                    Appeal from the

v.                                                                           )

                                                                              )                
383rd District Court

THE STATE OF TEXAS,                                     )

                                                                              )            
of El Paso County, Texas

Appellee.                           )

                                                                              )               
(TC# 20030D00503)

                                                                              )

 

O
P I N I O N

 

Antonio Dominguez
Martinez was indicted for five counts of aggravated assault with a deadly
weapon.  Over Appellant=s not guilty plea, the jury found
Appellant guilty of Counts I, III, and V and assessed punishment at 3 years= imprisonment for Count I; 3 years= imprisonment for Count III; and 13
years=
imprisonment for Count V.  In three issues,
Appellant contends the trial court erred in denying his motion to suppress
evidence from the search of his residence and his oral statement and erred in
overruling his objection to the State=s
cross-examination of him regarding his prior arrests.  We affirm.








On the evening of
January 13, 2003, Jose Zamora Vega was leaving his apartment building at 115
West Paisano in El Paso, with Ramona Padilla, Pedro Lopez, and Francisco
Granados, all residents of the building. 
As they were leaving, they passed Appellant=s
wife, Lydia Luna, in the stairway.  Mr.
Vega recalled that he and his companions were laughing and joking as they
proceeded out the front of the building.

As Mr. Vega and
his friends were sitting in a truck in the rear parking area, Appellant came
out of the apartment building through his back door and pointed a gun at
them.  Appellant was yelling at them and
claimed that they had insulted his wife. 
Appellant threatened to kill them. 
Erica Almarez, Ms. Padilla=s
daughter, heard her mother screaming and ran out to the porch of her
apartment.  Ms. Almarez saw Appellant
threatening her mother with a gun. 
Mr. Vega jumped out of the truck, climbed over a wall, and ran
towards the apartment building.  The
other occupants got out of the truck and Ms. Padilla yelled to her daughter to
hand her a cordless phone to call for help.

Mr. Vega took the
back entrance to the building and ran through the hallway to his
apartment.  Ms. Padilla saw Appellant
enter his apartment and then leave his apartment through the hallway before he
started chasing after Mr. Vega in the stairway. 
Mr. Vega ran towards his apartment door and warned his younger brothers
to stay inside.  Mr. Vega saw Appellant
coming up the stairs.  Fearful that
Appellant would attack his brothers, Mr. Vega reached for Appellant=s hands.  A struggle ensued and Appellant pulled out a
knife.  Appellant=s
wife appeared and held onto Mr. Vega=s
jacket from the back while Appellant began stabbing Mr. Vega.  Mr. Vega rolled down the stairs and then ran
away with Appellant chasing after him. 
Mr. Vega looked back and saw Appellant being apprehended by police, but
he kept on running.  He later returned to
talk to police and was taken to the hospital.








Officer Susan
Grass and her partner, Officer Moises Avila, were dispatched to the apartment
building in reference to a subject with a gun call, which en route was upgraded
to an emergency call on a stabbing.  When
the police officers arrived, there was a crowd gathered in front of the
address.  The people in the crowd were
screaming and pointing at Appellant who appeared very angry and was arguing
with the people.  The crowd told the officers
that Appellant had a knife.  Officer
Avila asked Appellant three or four times where the knife was before Appellant
pulled the knife from a sheath on his waistband.  Appellant started waving it above his
head.  Officer Avila commanded Appellant
to drop the knife, and after a couple of requests, Appellant complied.  Officer Avila then forced Appellant to the
ground with assistance from another officer who had arrived at the scene.

Members of the
crowd told Officer Grass that Appellant had a gun.  Officer Grass asked Appellant where the gun
was, but he did not produce one.  A small
child in the crowd led Officer Grass to Appellant=s
apartment.  The apartment door was
open.  Believing that somebody else in
the apartment had the gun, Officer Grass entered the apartment and found a
loaded gun in a small, open suitcase which was halfway underneath the bed in
the bedroom.  She retrieved the gun and
took it outside to another officer. 
Appellant was transported to the police station and placed in a holding
cell.  According to Officer Avila,
Appellant voluntarily made the comment that he was guilty of the stabbing, but
not guilty of the assault with a gun.

MOTIONS
TO SUPPRESS

In Issues One and
Two, Appellant contends the trial court erred by denying his motion to suppress
the evidence obtained from the search of his residence and his motion to
suppress his oral statement made to Officer Avila at the police station.

 








Standard
of Review

We review the
trial court=s ruling
on a motion to suppress for an abuse of discretion.  Guzman v. State, 955 S.W.2d 85, 88-9
(Tex.Crim.App. 1997).  Under this
standard, we give almost total deference to the trial court=s determination of historical facts
supported by the record, especially when the findings are based on an
evaluation of credibility and demeanor.  Id.  We review de novo mixed questions of
law and fact that do not turn on an evaluation of credibility and
demeanor.  Id; Balentine v.
State, 71 S.W.3d 763, 768 (Tex.Crim.App. 2002).  When the trial court does not make explicit
findings of fact, we review the evidence in a light most favorable to the trial
court=s
ruling.  Carmouche v. State, 10
S.W.3d 323, 327-28 (Tex.Crim.App. 2000). 
The trial court=s
ruling will be upheld if it is reasonably supported by the record and is
correct on any theory of law applicable to the case.  State v. Ross, 32 S.W.3d 853, 855-56
(Tex.Crim.App. 2000).

Warrantless
Search








Both the Fourth
Amendment to the United States Constitution and Article I, section 9 of the
Texas Constitution prohibit unreasonable searches and seizures.  See U.S.Const.
Amend. IV; Tex.Const. art. I, ' 9. 
Warrantless searches are per se unreasonable unless they fall
under one of a few exceptions.  Brimage
v. State, 918 S.W.2d 466, 500 (Tex.Crim.App. 1994)(plurality op. on reh=g); Kelly v. State, 669 S.W.2d
720, 725 (Tex.Crim.App. 1984), cert. denied, 469 U.S. 963, 105 S.Ct.
362, 83 L.Ed.2d 298 (1984).  To justify a
warrantless search of a residence under the emergency doctrine exception, the
State must show that:  (1) the officer
had probable cause at the time the search was made; and (2) the officer had an
immediate reasonable belief that he or she must act to Aprotect
or preserve life or avoid serious injury.@  See Mincey v. Arizona, 437 U.S. 385,
392-93, 98 S.Ct. 2408, 2413, 57 L.Ed.2d 290 (1978); Brimage, 918 S.W.2d
at 500-02; McNairy v. State, 835 S.W.2d 101, 106 (Tex.Crim.App.
1991).  The emergency doctrine applies
when the police are acting in their limited community caretaking role to Aprotect or preserve life or avoid
serious injury,@ not in
their Acrime-fighting@ role. 
Laney v. State, 117 S.W.3d 854, 861 (Tex.Crim.App. 2003), quoting
Mincey, 437 U.S. at 392, 98 S.Ct. at 2413.

In determining
whether a warrantless search is justified under the emergency doctrine, we
apply an objective standard of reasonableness which looks at the officer=s conduct and takes into account the
facts and circumstances known to the officer at the time of the entry.  See Colburn v. State, 966 S.W.2d 511,
519 (Tex.Crim.App. 1998); Brimage, 918 S.W.2d at 501.  Furthermore, we look to ensure that the
warrantless search is strictly circumscribed by the exigencies that justify its
initiation.  Laney, 117 S.W.3d at
862.  If the emergency doctrine applies,
the police may seize any evidence that is in plain view during the course of
their legitimate emergency activities.  Id.;
Mincey, 437 U.S. at 393, 98 S.Ct. at 2413; Brimage, 918 S.W.2d at
501.








In this case, the
police officers received a dispatch that an aggravated assault involving a gun
was in progress.  When they arrived at
the location, there was a crowd on the sidewalk.  People in the crowd were screaming and
pointing at Appellant.  They repeatedly
yelled to the officers that Appellant had a knife.  Officer Grass recalled that Appellant was
standing confrontational, with his legs spread apart, moving back and forth and
acting very agitated, upset, and angry. 
After repeated commands, Appellant eventually dropped a knife that he
had pulled out of a sheath on his waistband. 
Appellant was forced to the ground and handcuffed.  Officer Grass patted Appellant down for weapons,
but did not find a gun.  People in the
crowd, however, told the officers that Appellant had a gun.  Officer Grass asked Appellant where the gun
was, but he did not respond.  A child in
the crowd told Officer Grass that he knew where Appellant lived.  Officer Grass followed the child into the
apartment building to the second floor. 
The child pointed to an open apartment. 
According to Officer Grass, she was concerned that the emergency call
was for an aggravated assault with a gun, but no gun had been found on
Appellant.  Not knowing whether there was
a suspect with a gun in the apartment and out of concern for the safety of her
fellow officers and the crowd downstairs, Officer Grass entered the apartment
and began checking the rooms for people. 
When she entered the bedroom, Officer Grass observed a gun lying in a
partially open suitcase that was halfway under the bed.  Officer Grass picked up the gun and went
outside to show it to her partner.








At the time of the
entry, the officers were responding to an emergency call concerning an
aggravated assault with a gun.  Appellant
was detained, but no gun was recovered. 
Officer Grass believed that there was another suspect with the gun who
had remained in Appellant=s
apartment following their altercation. 
Out of fear for the safety of her fellow officers and the civilians in
the crowd below, Officer Grass entered Appellant=s
apartment to check for persons.  We also
note that no victim was immediately found at the scene when the police arrived,
thus there was a real possibility that there were victims inside the apartment
in need of medical attention.  Taking
into account the facts and circumstances known to Officer Grass, we conclude
that she could have reasonably believed that she had to act to protect or
preserve life or avoid serious injury. 
Once inside the apartment for a legitimate emergency activity, Officer
Grass saw the gun in plain view.  Since
Officer Grass= presence
in the apartment was justified under the emergency doctrine, this evidence was
lawfully seized.  See Laney, 117
S.W.3d at 862; see also Walter v. State, 28 S.W.3d 538, 541
(Tex.Crim.App. 2000)(Aplain
view@ doctrine
requires that:  (1) law enforcement
officials have a right to be where they are, that is, not in violation of the
Fourth Amendment; and (2) it be immediately apparent that the item seized
constitutes evidence, that is, probable cause to associated the item with
criminal activity).  Therefore, we
conclude the trial court did not abuse its discretion in denying Appellant=s motion to suppress the evidence
obtained from the search of his residence. 
Issue One is overruled.

Oral
Statement

Appellant also
contends that the trial court erred by denying his motion to suppress his
unrecorded oral statement to Officer Avila, in which he stated that he was
guilty of the stabbing, but not guilty of the assault with a gun.  Appellant asserts that the statement was
inadmissible because it was obtained during the functional equivalent of an
interrogation in violation of Article 38.22 of the Texas Code of Criminal
Procedure, the United States Constitution, and the Texas Constitution.








Section 3 of
Article 38.22 of the Texas Code of Criminal Procedure provides that no
statement made by an accused as the result of custodial interrogation will be
admissible at trial unless an electronic recording is made of it and the
accused was given Miranda warnings. 
See Tex.Code
Crim.Proc.Ann. art. 38.22, '
3(a)(Vernon 2005).  Article 38.22,
however, only applies to statements made as a result of custodial
interrogation.  See Morris v. State,
897 S.W.2d 528, 531 (Tex.App.--El Paso 1995, no pet.).  If the appellant=s
statements do not stem from custodial interrogation, neither Miranda nor
Article 38.22 requires their suppression. 
Id.  Custodial
interrogation requires:  (1) that the
suspect must have been Ain
custody;@ and (2)
the police must have Ainterrogated@ the suspect either by express
questioning or its functional equivalent. 
Id.; see also Rhode Island v. Innis, 446 U.S. 291, 300-02,
100 S.Ct. 1682, 1689-90, 64 L.Ed.2d 297 (1980). 
Not all police questioning is Ainterrogation.@ 
Jones v. State, 795 S.W.2d 171, 174 (Tex.Crim.App. 1990).  Interrogation refers to words, actions, or
questions by police that the police should know are reasonably likely to elicit
an incriminating response.  Innis,
446 U.S. at 300-01, 100 S.Ct. 1689-90; see also Roquemore v. State, 60
S.W.3d 862, 868 (Tex.Crim.App. 2001).  An
Aincriminating response@ is any response that the prosecution
may seek to introduce at trial.  Innis,
446 U.S. at 302 n.5, 100 S.Ct. at 1690.  

At the pretrial
suppression hearing, Officer Avila testified that he read Appellant his Miranda
rights in Spanish while at the scene. 
Appellant was then transported to the police station for
processing.  While Appellant was waiting
in the holding cell, Officer Avila explained to Appellant that he had presented
the case to the District Attorney, it had been accepted, a bond would be set,
and Appellant would be transferred to the County jail.  In Spanish, Appellant told Officer Avila that
he had stabbed someone, but he did not point the gun at anyone.  Officer Avila stated that he was not
questioning Appellant at that point, but merely making Appellant aware of the
process he was taking in reference to Appellant=s
case.  The trial court delayed its ruling
until the trial on the merits at which time it overruled Appellant=s objection to the admission of the
oral statement.  Officer Avila testified
that Appellant was in custody, but that he was not being interrogated when he
made the statement.  At trial, Officer
Avila told the jury that Appellant made the comment that he was guilty of the
stabbing, but not guilty of the assault with a gun.








The State concedes
that Appellant was in custody when he made the complained-of statement.  However, the State argues that the statement
was not the result of an interrogation. 
According to Officer Avila=s
testimony, he was advising Appellant of the status of the case when Appellant
volunteered the statement.  Officer Avila
was not asking any questions to Appellant at the time.  Further, there is no evidence to suggest that
Appellant was subjected to coercive conduct by the police.  We cannot agree with Appellant=s contention that informing Appellant
of the process of his case was the functional equivalent of police
questioning.  Merely explaining to
Appellant what was happening in his case is not an accusatory confrontation per
se.  There is nothing in the record
that suggests Officer Avila knew his words were reasonably likely to elicit an
incriminating response.  We conclude that
Appellant=s
statement was not the result of an interrogation, and thus, the statement was
admissible at trial.  Since the statement
was admissible, the trial court did not abuse its discretion in denying
Appellant=s motion
to suppress the statement.  Issue Two is
overruled.

CROSS-EXAMINATION
ON PRIOR ARRESTS

In Issue Three,
Appellant asserts that the trial court erred in permitting the State to conduct
cross-examination of him regarding his prior arrests over his objection.  Appellant complains that the State was not
entitled to impeach his credibility with his record of prior arrests and
convictions because he did not open the door to his criminal history.

Standard
of Review

Admission of
evidence is a matter within the trial court=s
discretion.  See Montgomery v. State,
810 S.W.2d 372, 378 (Tex.Crim.App. 1990). 
We review the trial court=s
ruling on the admissibility of evidence for an abuse of discretion.  Allridge v. State, 850 S.W.2d 471, 492
(Tex.Crim.App. 1991).  If the trial court=s decision to admit evidence falls
within the Azone of
reasonable disagreement,@
we will not disturb the trial court=s
ruling on appeal.  Salazar v. State,
38 S.W.3d 141, 153-54 (Tex.Crim.App. 2001); Montgomery, 810 S.W.2d at
390-91.  

 








False
Impression

An accused puts
his character for veracity in issue by taking the stand, and thus he may be
impeached in the same manner as any other witness.  See Hammett v. State, 713 S.W.2d 102,
105 (Tex.Crim.App. 1986).  When attacking
the credibility of a witness, evidence of prior criminal convictions is
admissible only if the crime was a felony or involved moral turpitude, and the
court determines that the probative value of admitting this evidence outweighs
its prejudicial effect to a party.  See
Tex.R.Evid. 609(a).  However, an exception to Rule 609 applies
when a witness makes statements concerning his past conduct that suggest he has
never been arrested, charged, or convicted of any offense.  Delk v. State, 855 S.W.2d 700, 704
(Tex.Crim.App. 1993); Prescott v. State, 744 S.W.2d 128, 131
(Tex.Crim.App. 1988).  Where a witness Acreates a false impression of law
abiding behavior, he >opens
the door= on his otherwise
irrelevant past criminal history and opposing counsel may expose the falsehood.@ 
Delk, 855 S.W.2d at 704. 
This exception is not limited to final convictions.  See Prescott, 744 S.W.2d at 130-31.

On direct examination
by defense counsel, Appellant was questioned about his Aproblems
with the law@ while
living in Riverside, California and in Dodge City, Kansas.  The following colloquy occurred:

Q.        While you were living in Riverside, you
did have some problems with the law at that time?

 

A.        Well, yes, I did have some tickets,
normal.

 

Q.        Okay. 
And you pled to some of those tickets, did you not?

 

A.        Well, I had to pay.

 

Q.        Okay. 
What kind of tickets were those?

 








A.        The majority of the tickets were for
driving fast.

 

Q.        Any other types of tickets you received?

 

A.        I had several tickets, but they=re minor.  I couldn=t
tell you all of them, unless you give me time to tell you all about them.

 

                                                              .               .               .

 

Q.        What kind of problems did you have with
the law there in Dodge City?

 

A.        I had problems with--of some people who--
the people who picked up animals from the streets, dogs, cats.

 

Q.        What kind of problem?

 

A.        The problem was I had roosters, fighting
roosters.  Could I speak now?

 

Q.        Yes. 
Continue.

 

A.        The problems started because he went in
illegally to take out the roosters.  And
then I had to go to court, city court, so they could give me back the roosters,
because he couldn=t cross
that area that was private without the permission of a judge.

 

Q.        Then what happened?

 

A.        That was arranged.  They returned the roosters.  I picked them up.  I had a fine of $200, and I paid it.  Afterwards, some time went by.  I was in auto parts, and I went to a
store.  And I --then I saw him at a
grocery store outside.  We argued.  He attacked me, and I defended myself.

 

Q.        And you went to court on that?

 

A.        No. 
I was a prisoner for three months. 
Then court.

 








The State argued to the trial court
that Appellant=s
testimony on his problems with the law had 
left a false impression with the jury that Appellant=s criminal history consisted only of
speeding tickets.  The trial court agreed
that Appellant had opened the door to his criminal history and granted the
State=s request
to cross-examine Appellant on his prior arrests and convictions in Riverside
and Dodge City for impeachment purposes.

Over Appellant=s objection, the State questioned
Appellant about his prior arrests and convictions for non-traffic
offenses.  Appellant denied that he was
arrested on April 28, 1994 for attempted murder in Riverside, California.  He denied having been arrested on April 29,
1987, by the Riverside Sheriff=s
Department for carrying a concealed weapon. 
He denied being arrested on January 23, 1983 in Los Angeles, California
for forgery.  Appellant also denied being
arrested on March 16, 1994 in Riverside for assault, denied being convicted for
public lewdness in Riverside on August 4, 1993, and denied being arrested for
possession of cocaine and drug paraphernalia in Kansas on December 11, 1995.  Appellant admitted that he pled guilty to an
assault charge in Kansas in 2000. 
Appellant admitted that he had been deported on October 1984 from
California, but denied that he was deported to Mexico again in September 2000 from
Kansas City County, Missouri.








After reviewing
the record, we find that Appellant gave misleading responses to his counsel=s inquiry into his problems with the
law in that he implied that his criminal history consisted only of minor traffic
offenses and a justifiable assault on an animal control officer.   The trial court could have reasonably
concluded that Appellant left a false impression with the jury with respect to
the extent of his trouble with the law in California and Kansas, and therefore,
the State was entitled to cross-examine Appellant on his prior arrests and
convictions in the respective States for impeachment purposes.  See e.g., Reese v. State, 531
S.W.2d 638, 640‑41 (Tex.Crim.App. 1976)(when witness by his direct testimony
leaves false impression of his Atrouble@ with the police, it is legitimate to
prove that the witness has been Ain
trouble@ on
occasions other than those about which he offered direct testimony).  Accordingly, we conclude the trial court did
not abuse its discretion in ruling that Appellant had opened the door to the
admission of this evidence.  Issue Three
is overruled.

We affirm the
trial court=s
judgment.

 

 

September
22, 2005

DAVID WELLINGTON
CHEW, Justice

 

Before Barajas, C.J., McClure, and Chew, JJ.

 

(Do Not Publish)