

FILED
*June 9, 2016*
Third Court of Appeals
Jeffrey D. Kyle
Clerk

ACCEPTED
03-15-00482-CR
10977922
THIRD COURT OF APPEALS
AUSTIN, TEXAS
6/6/2016 12:00:00 AM
JEFFREY D. KYLE
CLERK

**No. 03—15—00482—CR**
**No. 03—15—00483—CR**
**No. 03—15—00484—CR**

RECEIVED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
6/6/2016 12:00:00 AM
JEFFREY D. KYLE
Clerk

IN THE TEXAS COURT OF APPEALS
THIRD DISTRICT
AT AUSTIN

---

**TONY RAY ROBLETO, Jr. v. THE STATE OF TEXAS**

Appeal from Cause Numbers D-1-DC—14—204512, D-1-DC—14—204513, and D-1-DC—14—204516
299th Judicial District Court, Austin, Travis County, Texas
Honorable Karen Sage, Judge Presiding

---

**APPELLANT'S BRIEF PURSUANT TO *ANDERS v. CALIFORNIA***

---

TO THE HONORABLE THIRD COURT OF APPEALS:

Comes now Paul M. Evans, appointed counsel for Appellant Tony Robleto, and files this, his Appellant's Brief, in compliance with the Texas Rules of Appellate Procedure.

Respectfully submitted,

___/s/ Paul M. Evans_____
Paul M. Evans
Attorney for Appellant
SBN 24038885
811 Nueces Street
Austin, Texas 78701
(512) 569-1418
(512) 551-1550 FAX
paulmatthewevans@hotmail.com

1

## Identities of the Parties and Counsel

Presiding Judge:                     Honorable Karen Sage

Appellant:                           Tony Ray Robleto, Jr.

Trial Counsel:                     Keith Taniguchi
4200 Manchaca Road, Ste. A
Austin, TX 78704

Appellate Counsel:             Paul M. Evans
811 Nueces Street
Austin, Texas 78701

Appellee:                           State of Texas

Trial Counsel:                     Yvonne Patton
Assistant District Attorney
Travis County District Attorney
P.O. Box 1748
Austin, Texas 78767

Lead Appellate Counsel:       Rosemary Lehmberg
District Attorney
c/o Appellate Division
Travis County District Attorney
P.O. Box 1748
Austin, Texas 78767

## Table of Contents

Identities of the Parties and Counsel                                        2

Table of Contents                                                            3

Index of Authorities                                                         3

Statement of the Case                                                        6

Issues Presented                                                             8

Statement of Facts                                                           8

Discussion                                                                  12

Prayer                                                                      24

Certificate of Service                                                      24

Certificate of Compliance                                                   25

## Index of Authorities

<u>United States Constitution</u>

Fourth Amendment……………………………………………….12-13, 15, 19

<u>Federal Cases</u>

*Anders v. California*, 386 U.S. 738 (1967)…………………………………8

*Cady v. Dombrowski*, 413 U.S. 433 (1973)………………………19-20

*Franks v. Delaware*, 438 U.S. 154 (1978)……………………..7, 13-14

*Illinois v. Gates*, 462 U.S. 213 (1983)………………………………12-13

*Jones v. United States*, 362 U.S. 257 (1960)……………………………………13

*Illinois v. McArthur*, 531 U.S. 326 (2001)………………………………...…22

*Mincey v. Arizona*, 437 U.S. 385 (1978)……………………………………19-21

*Whren v. United States*, 517 U.S. 806 (1996)…………………….…………15

Texas State Statutes

Code of Criminal Procedure § 38.14 ………………..………………..……23

Health and Safety Code § 481.112(d)………………………………...….6

Penal Code § 12.42…………………………………………………...…6

Penal Code § 22.041……………………………………..……...…21

Transportation Code § 545.104……………………………..……15

Texas Cases

*Brimage v. State*, 918 S.W.2d 466 (Tex.Crim.App. 1996)………….………20

*Cates v. State*, 120 S.W.3d 352 (Tex.Crim.App. 2003)………………14

*Dancy v. State*, 728 S.W.2d 772 (Tex.Crim.App. 1987)……………….....14

*Davis v. State*, 144 S.W.3d 192 (Tex.App.—Fort Worth 2004, pet. ref'd)……………………………………………………....14

*Dickey v. State*, 96 S.W.3d 610 (Tex.App.—Houston [1st Dist.] 2002, no pet.)……………………………………………16

*State v. Elias*, 339 S.W.3d 667 (Tex.Crim.App. 2011)………………16
.
*Hinojosa v. State*, 4 S.W.3d 240 (Tex.Crim.App. 1999)…………….....14

*Janecka v. State*, 937 S.W.2d 456 (Tex.Crim.App. 1996)……………...14

*Johnson v. State*, 68 S.W.3d 644 (Tex.Crim.App. 2002)………………….…15

*Keehn v. State*, 279 S.W.3d 330 (Tex.Crim.App. 2009)………………..……16

*Laney v. State*, 117 S.W.3d 854 (Tex.Crim.App. 2003)……………….......18-20

*Luera v. State*, 561 S.W.2d 497 (Tex.Crim.App. 1978)……………...……16

*Massey v. State*, 933 S.W.2d 141 (Tex.Crim.App. 1996)……………………13

*McKissick v. State*, 209 S.W.3d 205 (Tex.App.—Houston [1st Dist.] 2006, pet. ref'd)……………………………………………..………13

*Neal v. State*, 256 S.W.3d 264 (Tex.Crim.App. 2008)………………………16

*Perez v. State*, No. 03-98-00465-CR, 1999 WL 546847 (Tex.App.— Austin 7/29/1999, no pet.)……………………………………...…15-16

*Rodriguez v. State*, 232 S.W.3d 55 (Tex.Crim.App. 2007)…………....…12-13

*Small v. State*, 977 S.W.2d 771 (Tex.App.—Fort Worth 1998, no pet.)………………………………………………….…16

*Thom v. State*, 437 S.W.3d 556 (Tex.App.—Houston [14th Dist.] 2014, no pet.)………………………………………..…….13

*Walter v. State*, 28 S.W.3d 538 (Tex.Crim.App. 2000)………………..…..15

Other Sources

ABA Standards for Criminal Justice § 1-1.1 (2d ed. 1980)…………………19

Wayne R. LaFave, 3 SEARCH AND SEIZURE § 6.6 (1996)………………19

## Statement of the Case

In trial court cause number D-1-DC—14—204512, Appellant Tony Ray Robleto, Jr., was charged by indictment with one count of Possession of a Controlled Substance (Methamphetamine) in an amount of four grams or more, but less than 200 grams, with intent to deliver, a first degree felony pursuant to Texas Health and Safety Code § 481.112(d). **CR-482** 9, 11.[1] In trial court cause number D-1-DC—14—204513, Appellant was charged by indictment with one count of Possession of a Controlled Substance (Cocaine) in an amount of four grams or more, but less than 200 grams, with intent to deliver, a first degree felony pursuant to Texas Health and Safety Code § 481.112(d). **CR-483** 8, 10. In trial court cause number D-1-DC—14—204516, Appellant was charged by indictment with one count of Possession of a Controlled Substance (Morphine) in an amount of one gram or more, but less than four grams, with intent to deliver, a second degree felony pursuant to Texas Health and Safety Code § 481.112(c). **CR-484** 9, 11. In each cause, the degree of punishment was enhanced by four non-sequential prior felony convictions. **CR-482** 9-12; **CR-483** 8-11; **CR-484** 9-12; *see* Texas Penal Code § 12.42(b), (c)(1).

---

[1] A one-volume Clerk's Record has been filed in each cause number. The designations "482," "483," and "483" refer to the final digits of the appellate cause number assigned to each respective cause on appeal.

The trial court held a pretrial hearing on trial counsel's "Defendant's First Amended Motion to Suppress and Motion for Hearing Pursuant to *Franks v. Delaware*." **RR2** 5-74; **RR3** 5-73; **Suppl.CR1** 3-13.[2] *See Franks v. Delaware*, 438 U.S. 154 (1978). The trial court denied trial counsel's motion to suppress. **RR3** 73-6. Appellant subsequently entered into a plea bargain agreement. The State waived the enhancement paragraphs on each indictment. In exchange for his plea of guilty to each of the three causes now pending on appeal, the trial court assessed the recommended sentence of six (6) years in the Institutional Division of the Texas Department of Criminal Justice, with all three sentences to run concurrently. **RR4** 4-9; **CR-482** 19-25, 31-2, 35; **CR-483** 17-23, 30-1, 33; **CR-484** 18-24, 31-2, 34. The trial court certified Appellant's right to appeal matters raised by written motion filed and ruled on prior to trial. **CR-482** 18, 22; **CR-483** 20, 26; **CR-484** 21, 25. Appellant filed timely notice of appeal in each cause. **CR-482** 34; **CR-483** 32; **CR-484** 35. This appeal followed.

---

[2] This refers to the Supplemental Clerk's Record filed before this Court on May 4, 2016. Trial counsel had filed his "Amended Motion to Suppress" in a related trial court cause number D-1-DC—14—204510. Said cause was later dismissed in conjunction with Appellant's subsequent acceptance of a plea bargain in the causes now on appeal. The parties and the trial court clearly relied on the arguments contained in this motion with respect to all of Appellant's related causes pending before the trial court. **Suppl.CR 1** 3-13; **RR3** 44-5, 64, 76; **RR4** 9.

## Issues Presented

After examining the entire record and conducting a diligent review, Counsel has arrived at the conclusion that there are no issues to be found in the record which might arguably support an appeal.

In conjunction with the present brief drafted pursuant to *Anders v. California*, 386 U.S. 738, 744 (1967), Counsel is filing a Motion to Withdraw as Attorney of Record. The present brief is accompanied by a "Notice of Filing of Anders Brief." Additionally, Counsel has provided Appellant with a copy of the present brief—as well as copies of the Clerk's and Reporter's Records—and has informed Appellant of his right to review the record and file a brief or other response on his own behalf, as well as all other legal remedies to which Appellant may have recourse to. *See* "Notice of Filing of Anders Brief."

## Statement of Facts

The basic underlying facts may be gathered from the following sources: the "Affidavit for Warrant of Arrest and Detention" of Appellant on file in each cause, **CR-482** 5-6; **CR-483** 3-4; **CR-484** 4-5; the "Affidavit for Search Warrant," in support of the search of Appellant's home, **RR5** DX # 1; the "Affidavit for Warrant of Arrest and Detention" of Andrea Mader, the passenger in Appellant's car when he was first detained for a traffic offense, **RR5** DX # 2; surveillance video footage taken from Appellant's home, depicting the events leading up to and

including the investigation of Appellant and his subsequent arrest, **RR5** DX # 4; a video taken of portions of Appellant's detention, captured on a cellphone by Appellant's roommate, Marcelino Sifuentes Suniga, **RR5** DX # 3; and the testimony of witnesses at the pretrial suppression hearing. Testimony was given by the following Austin Police Department Officers: Jeffrey Rodriguez, **RR2** 6-38, **RR3** 30-46; Ricky Hollis, **RR2** 38-41; Andrew Stotts, **RR2** 42-8; James Harrell, **RR2** 59-63; Brendan Bloom, **RR2** 63-8; Israel Pena, **RR3** 46-51; Detective George Silvio, **RR3** 52-60; and Joshua Griggers, **RR3** 60-3. Appellant's roommate testified in his behalf. **RR2** 69-72. Appellant also testified. **RR3** 7-29.

The basic underlying facts are not in dispute, aside from minor discrepancies, and may be excerpted wholesale from the "Affidavit for Warrant of Arrest and Detention" to suit the present purpose:

> On August 4th 2014, your Affiant [Grigio] was on duty as an Austin Police Detective for the Region 1 Metro Tactical Unit. Affiant was informed by Austin Police Department Street Narcotics Officers Joshua Griggers #6450, Mike Fickel #5629, Brendan Bloom #6367, Jeffrey Rodriguez #6290, Israel Pina #7095, Jason Johnston #6785 and Andrew Stotts #6494 of the following:

> On August 4th, 2014, Austin Police Department Street Narcotics officers conducted a city-wide operation targeting street level narcotics and prostitution. Prior to this operation, Ofc. Rodriguez received information from a Confidential Informant advising that a white male subject riding a red bicycle and wearing a back pack was regularly selling methamphetamine in the area of Cherry Meadow Drive. On August 4th, 2014, Ofc. Rodriguez was operating in plain civilian clothes in a plain unmarked vehicle. Ofc. Rodriguez drove onto Cherry Meadow Drive southbound from W. William Cannon in

an attempt to locate a subject matching that description. He observed a white male subject riding a red bicycle northbound on Cherry Meadow Drive from Matthews Lane, wearing a backpack. When Ofc. Rodriguez passed by the subject, the subject looked very intently at Ofc. Rodriguez and his vehicle. The subject rode onto the property of [Appellant's residence], and pointed out Ofc. Rodriguez's vehicle to another subject at that residence, later identified as Tony Robleto Jr. Ofc. Rodriguez believed that since the vehicle Ofc. Rodriguez was driving has been used in several undercover operations in South Austin in the last few years, that the subject on the bicycle recognized it as an undercover police vehicle. Ofc. Fickel arrived in the area. He was also driving a plain civilian vehicle, and was in plain clothes. Ofc. Fickel maintained continuous visual surveillance of front and east sides of [Appellant's] residence, as well as a portion of the carport to the south side of the residence, accessible from Cherry Meadow Drive. The subject on the bicycle entered the residence and remained inside for approximately 5-10 minutes. The subject on the bicycle exited the home, as well as Robleto and another subject, later identified as Marcelino Suniga. The subject on the bicycle left southbound on Cherry Meadow Drive. Officers attempted to follow the subject on the bicycle, but this subject eluded officers.

Ofc. Fickel alerted the other officers that Robleto and a female subject were leaving the residence in a brown 2002 Monte Carlo bearing CA license plate [* * * ], travelling northbound on Cherry Meadow Drive. Ofc. Rodriguez followed the Monte Carlo as it drove around the surrounding neighborhood briefly before returning to [Appellant's residence], making no stops. Ofc. Fickel remained at the residence to maintain visual surveillance of the area. Ofc. Rodriguez, who was following the Monte Carlo, observed Robleto travelling southbound on Cannon league fail to signal intent to turn left to go eastbound on Dan Jean Drive. Ofc. Rodriguez followed the Monte Carlo back to [Appellant's residence], at which time he saw Robleto exit the driver's side of the car. Robleto parked the Monte Carlo next to an older 1969 Chevelle 2-door with a tarp over it. His driver's door was within a couple feet of the passenger side of the Chevelle. The female passenger remained in the vehicle as Robleto was seen walking toward the rear of the residence, displaying his middle finger at Ofc. Rodriguez. Robleto soon returned to the area of the Monte Carlo with Suniga. Uniformed officers moved into the

10

area and were able to detain both subjects. While detaining Robleto for the traffic offense, Ofc. Stotts detected an odor of marijuana emitting from Robleto's person. Ofc. Stotts also saw Robleto place a plastic baggie into his front left pants pocket prior to being detained. Ofc. Fickel observed Robleto do the same. While searching Robleto's person, Ofc. Stotts recovered a small plastic baggie containing a green leafy substance that he believed, through his training and experience, to be marijuana. Ofc. Stotts also recovered a small zipper bag containing a large amount of cash he estimated to be between approximately $7000-$9000, grouped together in 4-5 wads where the bills were folded in half and bound with rubber bands. Affiant knows from experience that narcotics dealers are known to carry large sums of money originating from narcotics sales in this manner.

While officers were continuing their investigation at the scene, a female subject arrived at the residence. She was not a resident of [Appellant's residence], but advised she was the mother of a 5-month-old infant reported to have been inside the residence. Robleto was reported to be the father of the child. The female advised that she was there to pick up the child. Officers conducted a welfare check of the residence. The 5-month-old infant was the only subject located inside the home. Upon entering the home to check the welfare of the infant, but prior to discovering the child, Officers Harrell and Pina noticed a plate in the kitchen area in plain view that had two partially-smoked hand-rolled suspected marijuana "joints" on it. Ofc. Harrell detected a distinct odor of burnt marijuana in the home.

Affiant applied for and obtained a search warrant for the residence, SW# 14079877, sjgned at 12:57 AM on August 5th, 2014, by Austin Municipal Court Judge Cary. Officers executed the search warrant of the residence, which included all structures, places, structures [*sic*], and vehicles on the premises and within the curtilage of the property.

CR-482 5-6; CR-483 3-4; CR-484 4-5. *See also* RR2 6-36, 38-48, 59-72;

RR3 7-23, 27-43, 46-63. As recited above, the trial court held a pretrial hearing on

trial counsel's motion to suppress. RR2 5-74; RR3 5-73; Suppl.CR1 3-13. The

11

trial court denied trial counsel's motion to suppress. **RR3** 73-6. Appellant

subsequently entered into a plea bargain agreement. The State waived the

enhancement paragraphs on each indictment, and in exchange for his plea of guilty

to each of the three causes now pending on appeal, the trial court assessed the

recommended sentence of six (6) years in the Institutional Division of the Texas

Department of Criminal Justice, with all three sentences to run concurrently. **RR4**

4-9; **CR-482** 19-25, 31-2, 35; **CR-483** 17-23, 30-1, 33; **CR-484** 18-24, 31-2, 34.

The trial court certified Appellant's right to appeal matters raised by written

motion filed and ruled on prior to trial. **CR-482** 18, 22; **CR-483** 20, 26; **CR-484**

21, 25. Appellant filed timely notice of appeal in each cause. **CR-482** 34; **CR-483**

32; **CR-484** 35. This appeal followed.

## Discussion

Appellate review of an affidavit in support of a search warrant is conducted

under a highly deferential standard, interpreting the affidavit in a commonsensical

and realistic manner, and deferring to all reasonable inferences that a magistrate

could have made. *Rodriguez v. State*, 232 S.W.3d 55, 61 (Tex.Crim.App. 2007). In

*Illinois v. Gates*, 462 U.S. 213 (1983), the United States Supreme Court reaffirmed

the traditional totality-of-the-circumstances analysis for Fourth Amendment

probable-cause determinations:

> The task of the issuing magistrate is simply to make a practical,
> common-sense decision whether, given all the circumstances set forth

12

> in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for ... conclud[ing]" that probable cause existed.

*Gates,* 462 U.S. at 238-9, *citing Jones v. United States*, 362 U.S. 257, 271 (1960). The Court of Criminal Appeals has construed this "flexible and nondemanding" standard to apply to the Texas Constitution as well. *Rodriguez*, 232 S.W.3d at 60. The pertinent inquiry, then, is whether there are sufficient facts, coupled with inferences from those facts, to establish a "fair probability" that evidence of a particular crime will likely be found at a given location. *Rodriguez*, 232 S.W.3d at 62. This review is limited to the four corners of the affidavit, and statements made during a motion to suppress hearing do not factor into the final determination. *Massey v. State*, 933 S.W.2d 141, 148 (Tex.Crim.App. 1996); *McKissick v. State*, 209 S.W.3d 205, 212 (Tex.App.—Houston [1st Dist.] 2006, pet. ref'd).

If a defendant can establish by a preponderance of the evidence that a probable cause affidavit includes a false statement that was made knowingly, intentionally, or with reckless disregard for the truth, and the false statement is necessary to establish probable cause, the search warrant is invalid under the Fourth Amendment of the United States Constitution. *Franks v. Delaware*, 438 U.S. 154, 155-6 (1978); *Thom v. State*, 437 S.W.3d 556, 563 (Tex.App.—Houston [14th Dist.] 2014, no pet.). A misstatement in an affidavit that is the result of

13

simple negligence or inadvertence—as opposed to reckless disregard for the truth—will not invalidate the warrant. *Dancy v. State*, 728 S.W.2d 772, 783 (Tex.Crim.App. 1987), *citing Franks*, 438 U.S. at 170. An affidavit supporting a search warrant begins with the presumption of validity. *Franks*, 438 U.S. at 171; *Cates v. State*, 120 S.W.3d 352, 355 (Tex.Crim.App. 2003). Consequently, the defendant has the burden to rebut that presumption by proving by a preponderance of the evidence that the affiant made the false statement deliberately or with a reckless disregard for the truth. *Franks*, 438 U.S. at 156; *Davis v. State*, 144 S.W.3d 192, 201 (Tex.App.—Fort Worth 2004, pet. ref'd) (op. on reh'g). The defendant must also show that absent the false information, the remaining content is insufficient for probable cause. *Franks*, 438 U.S. at 156; *Davis*, 144 S.W.3d at 201.

When a defendant challenges the warrant affidavit on the ground that it contains known falsehoods, the trial court is not limited to the four corners of the affidavit. If the defendant makes the requisite preliminary showing of deliberate falsity, the trial court must go behind the four corners of the affidavit. *Cates*, 120 S.W.3d at 355 fn.3. The trial court at a suppression hearing, including one involving a *Franks* claim, is the sole trier of fact and the judge of the credibility of the witnesses and the weight to be given the evidence. *Hinojosa v. State*, 4 S.W.3d 240, 247 (Tex.Crim.App. 1999); *Janecka v. State*, 937 S.W.2d 456, 462

(Tex.Crim.App. 1996). Under the appropriate standard of review, this Court is required to give almost total deference to the trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor, while application-of-law-to-fact questions that do not turn upon credibility and demeanor are reviewed *de novo*. *Johnson v. State*, 68 S.W.3d 644, 652-3 (Tex.Crim.App. 2002).

It is undisputed that Appellant was detained after he was observed committing a traffic infraction. "Ofc. Rodriguez, who was following the Monte Carlo, observed Robleto travelling southbound on Cannonleague fail to signal intent to turn left to go eastbound on Dan Jean Drive." *See* "Affidavit for Search Warrant," **RR5** DX # 1, "Page 44 of 91." *See also* **RR2** 14, 25-6, 28, 65-6; **RR3** 60. An automobile stop must be reasonable under the Fourth Amendment, and as a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred. *Whren v. United States*, 517 U.S. 806, 810 (1996). When a traffic violation is committed within an officer's view, he may lawfully stop and detain the person for that violation. *Walter v. State*, 28 S.W.3d 538, 542 (Tex.Crim.App. 2000). A violation of Transportation Code § 545.104 by failure to signal a turn is a violation of the law and can be grounds for a traffic stop. *See* Transportation Code § 545.104; *Perez v. State*, No. 03-98-00465-CR, 1999 WL 546847, at *3 (Tex.App.—Austin

7/29/1999, no pet.) (mem. op., not designated for publication); *see also State v. Elias*, 339 S.W.3d 667, 676 (Tex.Crim.App. 2011).

Likewise, it is also undisputed that officers smelled the odor of marijuana on Appellant's person. "While detaining Robleto, Ofc. Stotts detected an odor of marijuana emitting from Robleto's person." *See* "Affidavit for Search Warrant," **RR5** DX # 1, "Page 44 of 91." *See also* **RR2** 42-44, 46, 67-8. The automobile exception to the warrant requirement permits police officers to conduct a warrantless search of a vehicle if it is "readily mobile and there is probable cause to believe that it contains contraband." *Keehn v. State*, 279 S.W.3d 330, 335 (Tex.Crim.App. 2009). Probable cause exists when there is a "fair probability" of finding inculpatory evidence at the location being searched. *Neal v. State*, 256 S.W.3d 264, 282 (Tex.Crim.App. 2008), *cert. denied*, 555 U.S. 1154 (2009). The smell of marijuana alone is sufficient to constitute probable cause to search a defendant's person, vehicle, or objects within the vehicle. *Small v. State*, 977 S.W.2d 771, 774-5 (Tex.App.—Fort Worth 1998, no pet.); *see Luera v. State*, 561 S.W.2d 497, 498 (Tex.Crim.App. 1978) ("[P]robable cause existed when the odor of marihuana was discovered."); *Dickey v. State*, 96 S.W.3d 610, 613 (Tex.App.—Houston [1st Dist.] 2002, no pet.) ("Texas courts have found probable cause to search based solely on the smell of marihuana.").

It is further undisputed that Appellant was placed under arrest after two grams of marijuana were found on his person during the search that followed. "While searching Robleto's person, Ofc. Stotts recovered a small plastic baggie containing a green leafy substance that he believed, through his training and experience, to be marijuana." *See* "Affidavit for Search Warrant," **RR5** DX # 1, "Page 44-5 of 91." *See also* **RR2** 14, 19, 21, 43, 57, 65; **RR3** 16, 38, 60.

A crucial and unanticipated development then arose, wholly unrelated to the ongoing investigation. "While officers were continuing their investigation at the scene, a female subject named Tamara Maynard arrived. Maynard was not a resident of [Appellant's residence], but advised she was the mother of a 5-month-old infant reported to have been inside the residence. Robleto was reported to be the father of the child. Maynard advised that she was there to pick up the child. Officers conducted a welfare check of the residence. The 5-month-old infant was the only subject located inside the home. Upon entering the home to check the welfare of the infant, but prior to discovering the child, Officers Harrell and Pina noticed a plate in the kitchen area in plain view that had two partially smoked hand-rolled suspected marijuana 'joints' on it. Ofc. Harrell detected a distinct odor of burnt marijuana in the home." **RR5** DX # 1, "Page 45 of 91." *See also* **RR2** 16-19, 21, 28-31, 33, 36-9, 54, 56, 60-3; **RR3** 17-20, 27-8, 36-8, 47, 49-50; **RR5** DX # 3-4. While Appellant's roommate is not mentioned in the search warrant

affidavit, it is clear that he was no longer inside of the house at this point in the investigation, despite testimony by Appellant to the contrary. **RR2** 15, 17, 69-70; **RR3** 27, 36. Using the surveillance footage in evidence, trial counsel himself elicited evidence from Appellant to establish decisively that the "check welfare" procedure lasted a mere two minutes and twenty seconds. **RR3** 19; **RR5** DX # 4.

The Court of Criminal Appeals has held "that, as part of the police officer's community caretaking functions to protect and preserve life and prevent substantial injury, an officer may enter and search a private residence without a warrant for the limited purpose of serving those functions when it is objectively reasonable." *Laney v. State*, 117 S.W.3d 854, 855 (Tex.Crim.App. 2003). In the instant cause, the term "check welfare" was used to describe the officers' actions on their initial foray into the residence. **RR5** DX # 1, "Page 45 of 91." For the most part, the trial court and the parties employed the same phrase, "check welfare." **RR2** 17-18, 28-31, 33, 36-8, 54, 56, 60, 62; **RR3** 18, 20, 37, 47, 49, 67, 69-73. Occasionally, the parties also interchangeably used the phrases "community caretaking" and "emergency." **RR2** 28-30, 33, 37, 56, 60.

The *Laney* opinion takes great care to distinguish the "emergency doctrine" from the closely related—and at times overlapping—"community caretaking function" and "exigent circumstances doctrine." *Laney*, 117 S.W.3d at 858-62.

While "check welfare" may not be the proper terminology—*see Laney*, 117

S.W.3d at 860-2—the application of the underlying principle remains the same:

> The [Supreme] Court in *Cady* [*v. Dombrowski*, 413 U.S. 433 (1973)] recognized that officers "engage in what, for want of a better term, may be described as community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *Id.* at 441 * * *; *see also* Wayne R. LaFave, 3 SEARCH AND SEIZURE § 6.6 (1996) (quoting ABA Standards for Criminal Justice § 1-1.1 (2d ed. 1980)) ("A police officer has 'complex and multiple tasks to perform in addition to identifying and apprehending persons committing serious criminal offenses.'"). They do so acting out of "concern for the safety of the general public...." *Cady,* 413 U.S. at 447 * * *. These "community caretaking functions" include, among others, the duty to "reduce the opportunities for the commission of some crimes through preventive patrol and other measures," "aid individuals who are in danger of physical harm," "assist those who cannot care for themselves," and "resolve conflict." LaFave, *supra*, § 6.6. And while not all of these community caretaking functions will justify a warrantless entry and search of a private residence, the Supreme Court has recognized that, "[t]he need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency." *Mincey* [*v. Arizona*, 437 U.S. 385 (1978)], 437 U.S. at 392 * * *. Therefore, the Court has held, "[T]he Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid"—the emergency doctrine. *Id.*
>
> * * *
>
> [T]he emergency doctrine applies when the police are acting, not in their "crime-fighting" role, but in their limited community caretaking role to "protect or preserve life or avoid serious injury." *Mincey*, 437 U.S. at 392 * * *.
>
> * * *

"We have used an objective standard of reasonableness in determining whether a warrantless search is justified under the Emergency Doctrine." [*quoting Brimage v. State*, 918 S.W.2d 466, 501 (Tex.Crim.App. 1996) (plurality op., on reh'g)]. This objective standard looks at the police officer's conduct and "takes into account the facts and circumstances known to the police at the time of the search." *Brimage,* 918 S.W.2d at 501. Furthermore, we look to ensure that the warrantless search is "strictly circumscribed by the exigencies which justify its initiation." [*quoting Mincey*, 437 U.S. at 393]. If the emergency doctrine applies, the police may seize any evidence that is in plain view during the course of their legitimate emergency activities [*citing Mincey*, 437 U.S. at 393]. "The fact that the protection of the public might, in the abstract, have been accomplished by 'less intrusive' means does not, by itself, render the search unreasonable" [*quoting Cady,* 413 U.S. at 447]. [*some citations omitted*]

*Laney*, 117 S.W.3d at 860, 861, 862.

In the instant cause, the officers entered the house without a warrant only after they were informed that a five-month-old infant was alone and unsupervised in the residence. **RR2** 17. It cannot be said that the trial court erred by finding that the officers' "actions in entering the home to ensure the well-being of the young child were reasonable under the circumstances." *Laney*, 117 S.W.3d at 862. Their "actions were 'totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statue.'" *Laney*, 117 S.W.3d at 862, *quoting Cady*, 413 U.S. at 441. *Cf. Laney*, 117 S.W.3d at 863: "More important to the emergency doctrine's application, there was an immediate, objectively reasonable belief on Deputy Quiser's part that he needed to act to protect the life of the child and prevent him from incurring serious injury. Although there was no

20

immediate threat to the child's safety or well-being, had the boy been left alone in the trailer while deputies took appellant away, there would have been a substantial risk of harm to the child. Furthermore, Deputy Quiser's search was 'strictly circumscribed' by the exigencies which justified its initiation. *Mincey,* 437 U.S. at 393 * * *. After the boy ran back in the trailer, Quiser called out for him but there was no response. Quiser then proceeded directly to where he was told the boy was—the back bedroom. When he found the boy there, he also saw the pornographic photos in plain view. Rather than expand his search for pornographic material, he immediately took the child out of the room. Based on these circumstances, we find that the emergency doctrine applies. Accordingly, the deputies were not required to secure a warrant to enter and search appellant's residence." *Also see id.:* "Arguably, the deputies would have been criminally liable for leaving the child behind," *citing* Texas Penal Code § 22.041 (abandoning or endangering child).

In the instant cause, the officers did not actually search the residence while performing the "check welfare," nor did they seize any evidence. Their observations were limited to what was in plain view. The procedure only lasted two minutes and twenty seconds, and while Appellant opined that the task could have been performed more quickly, it is reasonable to infer that the officers were not quite as familiar with the interior of his house as Appellant. **RR3** 17-20. While

it may have been unnecessary to use as many as seven officers for this task, the fact remains that a five-month-old infant is subject to a particularly high degree of risk for potential harm in any situation where there is a prolonged period of no supervision. *See* **RR2** 29-30, 60; **RR3** 18. At the time the entry was made after officers learned the child was inside, the infant had been unsupervised for an hour, and left alone with two pit bull dogs. **RR2** 17, 61-2. There is no authority to suggest that the officers were required to allow the mother or Appellant's roommate to retrieve the child in their stead, which could have clearly jeopardized their ongoing investigation and possibly their safety. While trial counsel cited *Illinois v. McArthur* in support of his contention that the officers needed probable cause in order to seize the house while awaiting a search warrant, the Supreme Court decision actually justifies the officers' decision to limit access to the residence. *McArthur*, 531 U.S. 326, 328-37 (2001).

Trial counsel's unrelenting concerns over the original confidential informant, the informant's information regarding the "guy on the red bicycle," whether or not it was a BMX bicycle, and the backpack all constitute irrelevant matters. *See* **RR2** 7-16, 22, 24, 30-1, 50-4, 57, 62-4, 70-3; **RR3** 11-14, 20-1, 30-2, 34-5, 38, 42-5, 53-7, 61-3. These are details that give context to the reason why officers originally encountered Appellant on the day in question, but they have no

direct bearing on the events leading to the probable cause that ultimately justified the search warrant.

Trial counsel's misgivings about Andrea Mader—Appellant's passenger during the traffic stop—also lack merit. Trial counsel seems to have been under the mistaken assumption that Texas Code of Criminal Procedure § 38.14 ("Testimony of an Accomplice") is applicable to the instant case. *See* **RR2** 19-21, 57; **RR3** 38-43, 45, 47-51, 58-60; **RR5** DX # 2. If anything, Mader's own possession of narcotics and drug paraphernalia enhanced her reliability, and her familiarity with the interior of the residence certainly did not detract from same.

Most importantly, trial counsel utterly failed to establish by a preponderance of the evidence that the probable cause affidavit contained a false statement that was made knowingly, intentionally, or with reckless disregard for the truth, much less any false statement necessary to establish probable cause. It is clear that trial counsel was essentially asking the trial court to perform a hyper-technical, piece-by-piece approach to the affidavit for search warrant, rather than the appropriate and traditional totality-of-the-circumstances analysis. *See* **Suppl.CR1** 3-13; **RR3** 63-70. In the opinion of the undersigned counsel, the present appeal presents no issues whatsoever that are not frivolous or otherwise lacking in merit.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, for the reasons stated above, the undersigned counsel requests that this Court find the present appeal frivolous in all respects, and that the Court grant his accompanying Motion for Withdrawal of Counsel in accordance with such a finding.

Respectfully submitted,

__/s/ Paul M. Evans_____
Paul M. Evans
811 Nueces Street
Austin, Texas 78701
(512) 569-1418
(512) 692-8002 FAX
SBN 24038885
paulmatthewevans@hotmail.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing Appellant's Brief was delivered by e-service facsimile to the office of the District Attorney of Travis County—mailing address P.O. Box 1748, Austin, Texas 78767, physical address 509 W. 11th Street, Austin, Texas 78701—on this the 5th day of June, 2016.

___/s/ Paul M. Evans_____

Paul M. Evans

**<u>CERTIFICATE OF COMPLIANCE</u>**

Relying on the Microsoft Word 97-2003 Document word count utility, I hereby certify that the present document contains 4,296 words, counting all contents specifically delineated for inclusion in the applicable word count under Tex. Rule App. Proc. § 9.4(i)(1).

          ___/s/ Paul M. Evans_____

          Paul M. Evans