**Affirmed and Memorandum Opinion filed August 29, 2023.**



**In The**

# Fourteenth Court of Appeals

**NO. 14-22-00331-CR**

**JEFFERY ANDRE MCDONALD, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 232nd District Court
Harris County, Texas
Trial Court Cause No. 1599898**

## MEMORANDUM OPINION

A jury found appellant Jeffery Andre McDonald guilty of murder and found true appellant's pleas of "true" to prior felony convictions for (1) delivery of cocaine and (2) possession with intent to deliver cocaine. *See* Tex. Pen. Code Ann. §§ 19.02(b)(1); Texas Controlled Substances Act, Tex. Health & Safety Code Ann. § 481.112. The jury assessed punishment at imprisonment for life. *See* Tex. Pen. Code Ann. § 12.42(d).

In a two issues on appeal, appellant argues (1) the trial court erred in

denying his motion to suppress the search warrant because it was supported by probable cause and (2) he was harmed by the introduction of the cell phone geolocation data. We affirm.

## I. BACKGROUND

In 2018, appellant was dating Rebecca "Becky" Suhrheinrich, who lived in an apartment complex. On July 30, 2018, the apartment complex's "courtesy patrol officer" received a welfare call to check on Becky.[1] After knocking on the door and receiving no response, the "courtesy patrol officer" knocked down the locked door and saw "scattered blood on the wall." The "courtesy patrol officer" searched the apartment and did not find Becky.

On July 31, after news coverage of Becky's disappearance, appellant's sister gave detectives information that led them to Greens Bayou Bridge, where they found Becky's torso wrapped in a bed sheet under the bridge. Becky's head, arms, and legs were dismembered from her torso by what appeared to be a saw. Becky's cell phone was later found in the landfill where her apartment complex dumped its trash.

On August 14, Investigator Crain applied for a search warrant directed at appellant's cellular carrier to obtain the call records and geolocation data for appellant's cell phone. In the search-warrant affidavit, Investigator Crain swore to the following:

- Crain spoke with Becky's employer, Demetria Goode, who told him that Becky did not show up for work on July 27th or 30th. Becky last left work at 5:07 p.m. on July 26, 2018, and was picked up by her boyfriend, known to Ms. Goode only as "Jeff" or "Jeffrey," who was driving her black 2018 Ford Escape SUV.

---

[1] It is unclear from the record if the "courtesy patrol officer" is a peace officer.

2

- Goode contacted Becky's apartment complex because it was unlike Becky not to show up for work. The courtesy patrol officer conducted a welfare check on Becky's apartment and discovered the crime scene.

- Crain spoke with Becky's upstairs neighbor Briana Talford, whom he found to be credible and reliable. Briana said she heard loud noises coming from Becky's apartment the night of July 26th. Her roommate had also heard a female voice yell, "Help me!"

- The GPS data for Becky's cell phone, which Crain lawfully obtained, showed that at around 8:00 a.m. on July 28, Becky's phone was in or near a landfill in Lake Jackson, Texas operated by the same company that provided trash service to Becky's apartment complex.

- Crain learned that appellant had been dating Becky and was the man who had picked her up from work on July 26th and had been driving her SUV.

- Crain interviewed Felicia Fuller, who lived in the same apartment complex as Becky and had previously dated appellant. She said that appellant visited her apartment on July 30th and was acting "very strange." She also claimed that appellant had his cell phone with him when he left her apartment.

- On July 31st, Crain interviewed appellant's sister, Roshawnda, who told Crain that on July 28th, she picked up appellant from a park and gave him a ride to her sister's house. There, appellant acted "very peculiar" and asked Roshawnda for a Clorox wipe, bleach, and latex gloves. Roshawnda said appellant poured bleach into two water bottles and asked her to drive him back to the park. While on the way, appellant asked her to stop the car; appellant exited the car and walked under the bridge that crosses Greens Bayou. After a few minutes, appellant returned, and she drove him to the park. Roshawnda recognized Becky from a television news report as the woman appellant had been dating and worried that appellant might be responsible for Becky's disappearance. Roshawnda told Crain that appellant generally owned and used a cell phone.

3

- After speaking with Roshawnda, Crain went to the bridge and discovered a white female's torso under the bridge wrapped in a bed sheet. The remains had not yet been identified.

- Crain swore that appellant's cellular site data records and geolocation information from the dates of July 1, 2018 to August 1, 2018 would "constitute evidence of the offense of Murder."

- Specifically, Crain claimed that the records "may show contact with someone who may have been present as a witness at the time of this murder, and/or have information currently unknown to law enforcement about this murder." Additionally, he asserted the records would show "the calls to and from [appellant's] cellular phone during and immediately after the incident under investigation."

Appellant filed a motion to suppress the geolocation data from his cell phone, arguing that the search-warrant affidavit did not provide sufficient facts to support probable cause. More specifically, appellant argued that Crain's affidavit: (1) failed to allege facts indicating that appellant was in possession of his phone when the offense was committed and (2) did not set out why geolocation information would be relevant to the investigation.

During the trial, the trial court held a brief hearing on the motion to suppress. Appellant's counsel expanded on the second argument:

[W]hen it comes to the [geolocation information, Crain] does not provide any information within the four corners as to what that is supposed to show. . . .

What he would have to say is . . . There's a cell tower. Phones connect to cell towers. That will give you locations and based upon that we can determine what the location of that phone's going to be at different times. There's your relevance. And that's . . . what they want this evidence for, is to put the phone at the apartment where the complainant lived and to put the phone in the area where the torso was found. And that's what they don't provide, how you get to that point.

4

The trial court rejected appellant's argument, reasoning:

> [I]t sound[s] like he maybe [Crain's] looking for corroboration as to whether or not Ms. Fuller was in contact with the defendant on July 30th, may have been a witness to the murder or have information about the murder. . . . I think it does specify that location that could show contact with someone who may have been present as a witness at the time of this murder coupled with the fact that he said the defendant was in possession of a cellular phone on July 30th, 2018. I think it gets the State across the hurdle and it's a fine line . . . And [geolocation,] I think it's a common enough used term that I think it gets us there. . . [T]he way I read this in total I think it's a close call. But I think it gets the State there to allow that information to come in based on the warrant. So I have to deny the motion to suppress and allow that to come in.

Appellant's counsel objected and asked for a running objection to the geolocation evidence from his cell phone; the trial court did not explicitly rule on his objection. After trial resumed, appellant's counsel stated, "we have no objections" when the geolocation data was introduced into evidence by Erin Havelka, a criminal intelligence analyst. At the beginning of the next day of trial, and outside the presence of the jury, appellant's counsel asked the trial court to clarify for the record that there was a running objection to the geolocation evidence, "just for purposes of preserving that issue" for appeal. The trial court remarked:

> It was the Court's understanding that on Ms. Havelka's testimony in regards to any location data of any cell phone, was objected to, and the Court did understand that that objection would be running throughout the entirety of Ms. Havelka's testimony, and it was my opinion that was for expediency's sake to not object during her testimony. So, I considered it as having been objected to based on the conversation we had previously.

> Appellant filed a timely notice of appeal.

## II. ANALYSIS

In two issues, appellant contends (1) the trial court erred in denying his motion to suppress the search warrant because it was supported by probable cause and (2) appellant was harmed by the introduction of the cell phone geolocation data.

## A. Preservation of error

Before we reach the merits of issue 1, we first address the State's argument that appellant failed to preserve the issue for appellate review.

*In General.* As a prerequisite to presenting a complaint for appellate review, the record must show that:

(1) the complaint was made to the trial court by a timely request, objection, or motion that:

    (A) stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context; and

    (B) complied with the requirements of the Texas Rules of Evidence or the Texas Rules of Civil or Appellate Procedure; and

(2) the trial court:

    (A) ruled on the request, objection, or motion, either expressly or implicitly; or

    (B) refused to rule on the request, objection, or motion, and the complaining party objected to the refusal.

Tex. R. App. P. 33.1(a).

Here, as outlined above, defense counsel objected—and asked for a running objection—to the geolocation data from his cell phone. The State cites to a case

from our court for the proposition that even if a running objection has been requested, error can still be waived if the party affirmatively states "no objection" when the evidence is later introduced. *See Jones v. State*, No. 14-08-00869-CR, 2010 WL 26527, at \*2 (Tex. App.—Houston [14th Dist.] Jan. 7, 2010, no pet.) (mem. op., not designated for publication). However, in *Jones*, we noted an exception to that general rule, observing that error is not waived when the trial court expressly states on the record that it considers the issue to be preserved for appeal. *See id.* More importantly, the court of criminal appeals has explained that whether a statement of "no objection" waives earlier-preserved error is "context-dependent":

> [A]n appellate court should not focus exclusively on the statement itself, in isolation, but should consider it in the context of the entirety of the record. If the record as a whole plainly demonstrates that the defendant did not intend, nor did the trial court construe, his "no objection" statement to constitute an abandonment of a claim of error that he had earlier preserved for appeal, then the appellate court should not regard the claim as "waived," but should resolve it on the merits.

*Thomas v. State*, 408 S.W.3d 877, 885 (Tex. Crim. App. 2013).

Under the *Thomas* framework, it is clear appellant did not intend, nor did the trial court construe, appellant's statement of "no objection" to constitute an abandonment of his claim of error regarding the motion to suppress. *See id.* Having concluded that appellant did not waive error, we now address issue 1.

## B.     Standard of review and applicable law

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *See Lerma v. State*, 543 S.W.3d 184, 189–90 (Tex. Crim. App. 2018). At a motion-to-suppress hearing, the trial court is the sole trier of fact and judge of credibility of witnesses and the weight to be given to their

testimony. *See id.* at 190. Therefore, we afford almost complete deference to the trial court in determining historical facts. *See id.*; *State v. Kerwick*, 393 S.W.3d 270, 273 (Tex. Crim. App. 2013). A trial court's ruling will be sustained if it is reasonably supported by the record and correct under any theory of law applicable to the case. *Laney v. State*, 117 S.W.3d 854, 857 (Tex. Crim. App. 2003). However, we review de novo mixed questions of law and fact that do not rely on an evaluation of credibility and demeanor. *See id.*

When the trial court does not make explicit findings of fact, as in the case before us, we view the evidence in the light most favorable to the trial court's ruling and assume the trial court made implicit findings of fact supported by the record. *See Lerma*, 543 S.W.3d at, 190.

Because a cell phone's geolocation data can contain "a detailed and comprehensive record of [a] person's movements," the police must obtain a warrant, supported by probable cause, for seven or more days of such data. *See Carpenter v. United States*, 138 S. Ct. 2206, 2217, n.3 (2018); *see also Holder v. State*, 595 S.W.3d 691, 703–04 (Tex. Crim. App. 2020) (applying *Carpenter* to Tex. Const. art. 1, § 9). The search-warrant application must "state the facts and circumstances that provide the applicant with probable cause to believe that: (A) criminal activity has been, is, or will be committed; and (B) searching the telephone or device is likely to produce evidence in the investigation of the criminal activity described in Paragraph (A)." Tex. Code Crim. Proc. Ann. art. 18.0215(c)(5). "Probable cause exists when, under the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found at a particular location." *State v. Baldwin*, 664 S.W.3d 122, 130 (Tex. Crim. App. 2022), *cert. denied*, 143 S. Ct. 777 (2023). A reviewing court must "give great deference to a magistrate's probable cause determination to encourage

8

police officers to use the warrant process." *Id.*

In determining whether an affidavit provides probable cause to support a search warrant, an issuing court and a reviewing court are constrained to the four corners of the affidavit. *See State v. McLain*, 337 S.W.3d 268, 271 (Tex. Crim. App. 2011). "While a magistrate may not baselessly presume facts that the affidavit does not support, the magistrate is permitted to make reasonable inferences from the facts contained within the affidavit's 'four corners.'" *Foreman v. State*, 613 S.W.3d 160, 164 (Tex. Crim. App. 2020). However, "conclusory allegations alone are insufficient to support a finding of probable cause." *Baldwin,* 664 S.W.3d at 132. "Ultimately, the test is whether the affidavit, read in a commonsensical and realistic manner and afforded all reasonable inferences from the facts contained within, provided the magistrate with a 'substantial basis' for the issuance of a warrant." *Foreman*, 613 S.W.3d at 164.

The admission of evidence obtained in violation of the Fourth Amendment is reviewed for harmless error. *See Hernandez v. State*, 60 S.W.3d 106, 108 (Tex. Crim. App. 2001). Under that standard, a conviction must be reversed "unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction." Tex. R. App. P. 44.2(a).

## C. Motion to suppress

### 1. Possession of cell phone immediately before, during, or after the alleged offense

Appellant relies on *Baldwin* to claim that the search-warrant affidavit in the present case was not supported by probable cause because it did not provide any evidence that appellant possessed his cell phone immediately before, during, or after the alleged murder. *See Baldwin,* 664 S.W.3d at 135. However, *Baldwin* does not stand for the general proposition that to be supported by probable cause, a

9

search warrant affidavit must provide facts that the defendant carried a cell phone before, during, or after the commission of the alleged crime. Instead, the court in *Baldwin* summarized its conclusion as follows:

> Is generic, boilerplate language about cell phone use among criminals sufficient to establish probable cause to search a cell phone? We hold it is not. Instead, specific facts connecting the items to be searched to the alleged offense are required for the magistrate to reasonably determine probable cause. . . .

*Id.* at 134.

Ultimately, the court in *Baldwin* concluded that the affidavit in question was not supported by probable cause because it relied on generic "boilerplate language" that it "is common for suspects to communicate about their plans via text messaging, phone calls, or through other communication applications." *Id.* at 126. The court then detailed the affidavit's lack of facts connecting the cell phone to the alleged offense:

> The affidavit contains nothing about the phone being used before or during the offense. Suspicion and conjecture do not constitute probable cause, and "the facts as recited in the affidavit in this cause evidence nothing more than mere suspicion." Therefore, the magistrate erred by substituting the evidentiary nexus for the officer's training and experience and generalized belief that suspects plan crimes using their phones. The boilerplate language in itself is not sufficient to provide probable cause in this case, nor does the remaining affidavit set forth details in sufficient facts to support probable cause. Considering the whole of the affidavit, there is no information included that suggest anything beyond mere speculation that Appellee's cell phone was used before, during, or after the crime.

*Id.* at 135 (internal quotations omitted).

Months after *Baldwin* was issued, this court issued *Stocker v. State*, which is procedurally similar to the present case. *See* 656 S.W.3d 887, 899 (Tex. App.—Houston [14th Dist.] 2022, pet. granted). Stocker was charged with murder and

10

filed a motion to suppress site-location information associated with his cell phone. This court observed that:

> a mere desire to learn the movements or location of a suspect is not sufficient probable cause to obtain cell site location information from a suspect's wireless carrier. There must be some factual basis in the affidavit providing a fair probability that law enforcement could expect to find inculpatory location information evidence from the carrier indicating that a specific person committed a particular offense.

*Id.* at 906–07.

Then, analyzing the probable-cause affidavit for the search warrant, this court concluded that the affidavit was supported by probable cause:

> Considering the four corners of the affidavit, we conclude that it contains sufficient factual assertions from which the district judge could reasonably determine there was a fair probability that the location data relating to appellant's phone would provide evidence of the murder described in the affidavit and that appellant committed the murder. Although the affidavit does contain some conclusory statements, it also includes additional facts establishing the requisite nexus between the murder and the electronic records to be searched. In particular, the affidavit contains facts conclusively linking appellant to the murder weapon—a handgun—thereby connecting appellant to the specific location of the murder. Thus, the facts contained in the affidavit give rise to a fair probability that a search of T-Mobile's cell site location information associated with appellant's phone would reveal inculpatory evidence that a particular person, appellant, committed the murder because the location of his Samsung phone would be placed at or near the murder scene at the relevant time.

*Id.* at 908.

The search-warrant affidavit in the present case is much more akin to the affidavit we approved of in *Stocker* than the affidavit in *Baldwin*. Crain did more than simply assert boilerplate language concerning how criminals use cell phones.

11

Based on the facts asserted in Crain's affidavit: Becky was last seen leaving her place of employment with appellant; appellant's ex-girlfriend, who lives in the same apartment complex as Becky, told Crain that appellant was acting strange when he visited her apartment several days after Becky's disappearance; on July 28, appellant's sister picked up appellant from a park and drove him "to her sister's home"; after asking his sister for a Clorox wipe, bleach, and latex gloves, appellant asked her to return him to the park, where appellant then walked under the nearby bridge; and Becky's corpse was located under the same bridge.

Stated differently, the test is not whether the State alleged facts showing that the defendant possessed a cell phone before, during, or after the alleged offense, but "whether the affidavit, read in a commonsensical and realistic manner and afforded all reasonable inferences from the facts contained within, provided the magistrate with a 'substantial basis' for the issuance of a warrant." *Foreman*, 613 S.W.3d at 164. We conclude that the facts contained in the affidavit give rise to a fair probability that the wireless carrier's geolocation information associated with appellant's cell phone would reveal inculpatory evidence that a particular person, appellant, committed the murder because the location of his cell phone would be placed at or near both the murder scene—Becky's apartment—and the location where the torso was recovered—underneath the bridge—at the relevant times.

## 2.    Explanation of geolocation data

Appellant next argues that the affidavit was insufficient because it did not explain what geolocation data is or how it would connect him to the murder. But appellant does not cite to any cases that have required a search warrant affidavit to specifically explain what geolocation data is. Furthermore, in *Stocker*, this court concluded (1) the affidavit contained sufficient factual assertions from which the district judge could reasonably determine there was a fair probability that the

12

geolocation data from defendant's cell phone would provide evidence of the murder described in the affidavit and (2) the defendant committed the murder, despite the affidavit not defining geolocation data. *See Stocker,* 656 S.W.3d at 908.

We also note that the controlling statutory authority for obtaining a search warrant of geolocation data imposes no requirement of defining geolocation data:

> (b) A search warrant may not be issued under this article unless the sworn affidavit required by Article 18.01(b) provides sufficient and substantial facts to establish probable cause that:
>
>> (1) a specific offense has been committed; and
>>
>> (2) the electronic customer data sought:
>>
>>> (A) constitutes evidence of that offense or evidence that a particular person committed that offense; and
>>>
>>> (B) is held in electronic storage by the service provider on which the warrant is served under Article 18B.355(c).

Tex. Code Crim. Pro. Ann. art. 18B.354. Thus, like our discussion above, the test here for probable cause is not guided by whether the State defined geolocation data in the affidavit, but "whether the affidavit, read in a commonsensical and realistic manner and afforded all reasonable inferences from the facts contained within, provided the magistrate with a 'substantial basis' for the issuance of a warrant." *Foreman*, 613 S.W.3d at 164.

The search-warrant affidavit in the present case provided substantial facts establishing that a specific offense had been committed—murder—and that the electronic data sought constituted evidence of that murder. *See* Tex. Code Crim. Pro. Ann. art. 18B.354. Therefore, we conclude that the affidavit provides probable cause to support issuance of a search warrant. *See Baldwin,* 664 S.W.3d at 130; *see also Stocker,* 656 S.W.3d at 908. Accordingly, the trial court did not err in denying appellant's motion to suppress evidence obtained from the search of the cellular carrier's records. *See Lerma*, 543 S.W.3d at 189–90. We overrule issue 1.

Because we have concluded the trial court did not err, we need not address issue 2, which addresses harm. Tex. R. App. P. 471.

### III. CONCLUSION

We affirm the judgment of the trial court as challenged on appeal.


/s/ Charles A. Spain
Justice

Panel consists of Chief Justice Christopher and Justices Jewell and Spain.

Do Not Publish — Tex. R. App. P. 47.2(b).